692 A.2d 1031

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Eric WILLIAMS, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 1996.

Decided April 21, 1997.

---

Dennis C. McAndrews, William R. Toal, III, Media, for Commonwealth.

Patrick J. Connors, Media, for Eric Williams.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

The issue on appeal is whether evidence seized from appellee's bedroom after a warrantless search by his parole officer should be suppressed where appellee signed a form giving an agent of the Pennsylvania Board of Probation and Parole ("Parole Board") consent to search his premises as a condition of his parole. Because we find that the evidence should not be suppressed under the facts of this case, we reverse the order of the Superior Court and reinstate the judgment of sentence entered by the trial court.

### BACKGROUND

The relevant facts are that appellee was convicted in 1989 of possessing 1,012 grams of cocaine with intent to deliver. On March 7, 1990, appellee was sentenced to a term of imprisonment of two (2) to six (6) years. On April 8, 1992, appellee was paroled from prison and his case was assigned to Parole Agent Schuler of the Pennsylvania Board of Probation and Parole for supervision. Before being released from prison, appellee signed a form entitled "Conditions Governing Parole/Reparole." As a condition of his parole, appellee listed his residence as being on West Sixth Street in Chester, Delaware County, Pennsylvania and he agreed to abstain from

the unlawful possession or sale of narcotics. The form also included the following condition:

I expressly consent to the search of my person, property and residence without a warrant by agents of the Pennsylvania Board of Probation and Parole. Any items in the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process.

On June 30, 1993, appellee's case was transferred to Parole Agent Bray for supervision. Agent Bray was instructed by his supervisor to visit appellee at his residence. However, prior to visiting appellee, Agent Bray received information from a person he regarded as a reliable confidential informant that appellee was once again involved in dealing drugs. Agent Bray's inquiry to the local police also confirmed his confidential informant's information since the local police informed Agent Bray that one of their confidential informants also reported that appellee was involved in dealing drugs.

On July 1, 1993 at approximately 9:00 p.m., Agent Bray went to appellee's residence at West Sixth Street in Chester. Agent Bray was met at the door by appellee's mother and was informed that appellee was not present. Agent Bray asked appellee's mother if he could look around and appellee's mother initially consented. However, when Agent Bray reached appellee's bedroom, appellee's mother changed her mind and revoked her consent to the search. Agent Bray informed appellee's mother that he was entitled to conduct the search because he believed that appellee may be engaging in actions which would violate the terms of his parole. Appellee's mother did not respond to Agent Bray's comments and Agent Bray proceeded to search appellee's bedroom.

During the search, Agent Bray found 182.2 grams of cocaine, some of which was packaged in individual plastic bags, along with an Accu-lab pocket scale and five (5) .380 caliber rounds of live ammunition. Agent Bray telephoned the Chester police and notified them of his discovery of these items. The Chester police responded to Agent Bray's telephone call

by going to the residence, seizing the items in question found in appellee's bedroom and obtaining a warrant for appellee's arrest.

On July 14, 1993, a criminal complaint[1] was filed charging appellee with possession of cocaine with intent to deliver[2] and illegal possession of drug paraphernalia.[3] Prior to trial on these charges, appellee filed an omnibus motion to suppress the evidence seized from his bedroom based on the assertion that the search violated his constitutional rights since it was performed without a warrant, lacked probable cause and violated the knock and announce rule. On May 12, 1994, the trial court conducted a hearing on appellee's motion. At the hearing, the Commonwealth introduced the parole form signed by appellee granting consent to the Parole Board to search his residence. At the conclusion of the hearing, the trial court denied appellee's motion to suppress.

On July 19, 1994, after a one day jury trial, appellee was convicted. On August 2, 1994, appellee was sentenced to a term of imprisonment of seven (7) to fourteen (14) years on the possession with intent to deliver charge and a concurrent term of imprisonment of one (1) to two (2) years on the drug paraphernalia charge.

Appellee timely appealed to the Superior Court where he asserted that the trial court erred in not suppressing the evidence seized from his bedroom. On July 13, 1995, the Superior Court, in an unpublished opinion, reversed the trial court and remanded for a new trial basing its decision on the court's belief that appellee's rights under the Fourth Amendment to the United States Constitution were violated, thereby mandating suppression of the evidence seized from appellee's bedroom.

1. The criminal complaint also charged appellee with knowing or intentional possession of a controlled substance, in violation of 35 Pa.S.A. § 780–113(a)(16). The Commonwealth later withdrew this charge.

2. 35 Pa.S.A. § 780–113(a)(30).

3. 35 Pa.S.A. § 780–113(a)(32).

The Commonwealth filed a timely petition for appeal. We granted *allocatur* in order to determine whether the evidence seized from appellee's bedroom by his parole officer should be suppressed.

## LEGAL DISCUSSION

### 1. *Rule 323(d) Claim*

■ Initially, the Commonwealth contends that we need not reach the issue concerning the adequacy of appellee's consent because appellee did not comply with Rule 323(d) of the Rules of Criminal Procedure [4] by failing to specifically address the consent issue with particularity in his omnibus pre-trial motion to suppress. This contention is meritless. Appellee's pre-trial suppression motion first described the facts surrounding the search and then sought to suppress the cocaine seized after the search by the parole agent on the grounds that the search was performed without a warrant, that no probable cause existed for the search and the failure to comply with the "knock and announce" rule. Such a motion complies with the requirements of Rule 323(d). Accordingly, this claim must fail.

### 2. *Suppression*

■ Turning to the validity of the search of appellee's bedroom, we begin our analysis with matters not in controversy between the parties. When reviewing a trial court's decision to suppress evidence, we are bound by the facts found by the suppression court, and we may reverse that court only if the legal conclusions drawn from the facts are erroneous. *Commonwealth v. Lagana*, 517 Pa. 371, 375, 537 A.2d 1351, 1353–54 (1988). Under both the Fourth Amendment to the United States Constitution [5] and Article 1, Section 8 of the

**4.** Rule 323(d) provides that a criminal defendant's motion to suppress "shall state specifically and with particularity the evidence sought to be suppressed, the grounds for the suppression and the facts and events in support thereof."

**5.** The Fourth Amendment to the United States Constitution, applicable to the States via the Fourteenth Amendment, mandates that:

Pennsylvania Constitution,[6] warrantless searches and seizures are unreasonable and therefore prohibited except for a few established exceptions. *E.g. Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992). We shall examine each constitutional provision separately.

(a) *Fourth Amendment*

A parolee and a probationer have limited Fourth Amendment rights because of a diminished expectation of privacy. *Griffin v. Wisconsin,* 483 U.S. 868, 873–74, 107 S.Ct. 3164, 3168–69, 97 L.Ed.2d 709 (1987).[7] As the United States Supreme Court stated in *Griffin,* "a probationer's home like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'" *Griffin,* 483 U.S. at 873, 107 S.Ct. at 3168. However, the requirement that a parole officer obtain a warrant based upon probable cause before conducting a search does not apply to a parolee because parole is a form of criminal punishment imposed after a guilty verdict and the states must have the necessary power over parolees in order to successfully administer a parole system as a controlled passageway between prison and freedom. *Griffin,* 483 U.S. at 873–875, 107 S.Ct. at 3168–69.

> [T]he right of the people to be secure in their persons, houses, papers, and effect, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

6. Article I, Section 8 of the Pennsylvania Constitution provides that:

> [T]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, an no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

7. While *Griffin* concerned a probationer's fourth amendment rights, its reasoning equally applies to a parolee's rights since the constitutional rights of a parolee are indistinguishable from that of a probationer. *Gagnon v. Scarpelli,* 411 U.S. 778, 782 n. 3, 93 S.Ct. 1756, 1760 n. 3, 36 L.Ed.2d 656 (1973); *see also United States v. Hill,* 967 F.2d 902 (3d Cir.1992) (*Griffin* applies to warrantless search of parolee's residence based on probable cause even though no statutory or regulatory framework exists).

In *Commonwealth v. Pickron,* 535 Pa. 241, 634 A.2d 1093 (1993), this Court recognized that a parolee has limited Fourth Amendment rights. In that case, Pickron, a parolee, was arrested after controlled substances and other evidence were seized from his apartment following a warrantless search by parole officers. Pickron moved to suppress the evidence alleging that his Fourth Amendment rights were violated by the warrantless search. The trial court granted Pickron's motion and this Court affirmed because it found that the Fourth Amendment prohibited the warrantless search of a probationer or a parolee's residence based upon reasonable suspicion without either the consent of the parolee or a statutory or regulatory framework governing this kind of search.[8] This Court, however, limited its holding to the facts of the case and specifically reserved the question of whether an agreement signed by a parolee giving consent to a warrantless search by a parole officer or a statute authorizing such searches could survive constitutional scrutiny.[9] In a question of first impression for this Court, we now address the effect appellee's signing of the parole form giving a parole agent consent to search his residence has on such a situation.

In deciding this issue, we must balance the governmental interests involved in granting parole and supervising parolees with that interest of the private individual, i.e. the parolee, which has been affected by the governmental action. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In assessing the governmental interest in allowing a warrantless search of a parolee's residence, we must look to the purpose of parole in this Commonwealth. The public policy as to parole in this Commonwealth is set forth in Section 1 of the Act of 1941 which provides:

**8.** This Court in *Pickron* never addressed whether the Pennsylvania Constitution provided parolees such as Pickron with greater constitutional protection than the Federal Constitution. *Pickron, supra.* at 246 n. 2, 634 A.2d at 1096 n. 2.

**9.** The General Assembly passed two statutory provisions in 1995 authorizing searches of a parolee by state and county parole officers. *See* 61 P.S. §§ 331.27a and 331.27b. Pursuant to these provisions, evidence discovered shall not be suppressed if the parole agent has a reasonable suspicion that a parolee has violated the conditions of his parole.

[T]he value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of the Commonwealth that persons subject or sentenced to imprisonment for crime, shall on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of justice.

61 P.S. § 331.1. Moreover, this Court has stated that:

[P]arole is first and foremost a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls. The prisoner on parole is still in the legal custody of the state ... and is under the control of the warden and other agents of the Commonwealth until expiration of the term of his sentence.

*Hendrickson v. Pennsylvania State Board of Parole,* 409 Pa. 204, 185 A.2d 581 (1962), *cert. denied,* 374 U.S. 817, 83 S.Ct. 1713, 10 L.Ed.2d 1041 (1963). In order to effectuate this purpose and to facilitate the parolee's transition into society, the General Assembly has given the Parole Board broad powers to supervise a parolee and to impose regulations on a parolee's conduct upon release that the Commonwealth could not impose on ordinary citizens. *See* 61 P.S. § 331.23.[10]

■ The parolee's interests coincide to some extent with that of the government in that he desires to make a transition from incarceration to freedom. In addition, a parolee has a

**10.** Section 331.23 of Title 61 provides that:

[T]he board shall have the power and it shall be its duty, to make general rules for the conduct and supervision of persons heretofore or hereafter placed upon parole. In addition to the power to make general rules and regulations hereby granted, the board may, in particular cases, as it deems necessary to effectuate the purpose of parole, prescribe special regulations for particular parolees.

Restrictions placed on a parolee in accordance with the powers of this statutory provision include reporting regularly to his parole officer, living in a residence approved by the Parole Board, abstaining from the use of drugs, refraining from owning a weapon and refraining from assaultive behavior. *See* 37 Pa.Code § 63.4.

privacy interest protected by the Fourth Amendment. When balancing the interests of both the Commonwealth and the parolee, we do not believe it contravenes the Fourth Amendment for a conditionally released convict to be accorded a more narrowly protected privacy interest than that afforded a free individual in order to facilitate the parolee moving more quickly from the confinement of a prison to a point where most of his full panoply of civil liberties are restored.

Other state courts faced with the issue of whether a parolee's Fourth Amendment rights have been violated by a warrantless search by his parole officer where the parolee has signed a consent form upon release have attempted to balance the governmental and individual interests by adopting a "middle ground" approach. Under this approach, the parolee's signing of a parole agreement giving his parole officer permission to conduct a warrantless search does not mean either that the parole officer can conduct a search at any time and for any reason or that the parolee relinquishes his Fourth Amendment right to be free from unreasonable searches. Rather, the parolee's signature acts as acknowledgement that the parole officer has a right to conduct reasonable searches of his residence listed on the parole agreement without a warrant. A search will be deemed reasonable if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty. *See Williams v. State,* 321 Ark. 344, 902 S.W.2d 767, *cert. denied,* —— U.S. ——, 116 S.Ct. 676, 133 L.Ed.2d 525 (1995) (gun seized in warrantless search of parolee by parole officer not suppressed in murder trial because parole agreement to submit to warrantless search was valid where facts demonstrated that parole officer had reasonable grounds to investigate possible parole violation); *Pena v. State,* 792 P.2d 1352 (Wyo.1990) (adopted middle ground approach and did not suppress drugs found in search by parole officer because reasonable grounds existed for the search); *People v. Boyd,* 224 Cal.App.3d 736, 274 Cal.Rptr. 100 (Cal.Ct. App.1990) (parole search can be authorized by parole agreement where parole officer had reasonable suspicion that parol-

ee had violated terms of his parole and that handbag found during search may have belonged to parolee; thus, handbag and items inside were not suppressed); *State v. Johnson,* 748 P.2d 1069 (Utah 1987) (using middle ground approach, Utah Supreme Court refused to suppress stolen check found by parole officer during a warrantless search of parolee's room because parole officer had reasonable suspicion that parolee had committed a parole violation and search was reasonably related to parole officer's duties).

We believe this "middle ground" approach to warrantless searches pursuant to a signed parole agreement comports with the Fourth Amendment protection afforded to parolees by the United States Supreme Court in *Griffin, supra,* and in our sister states. Thus, we adopt this approach for examining whether evidence seized from a parolee after a warrantless search by his parole officer should be suppressed as violative of the parolee's Fourth Amendment rights where the parolee signed a form giving an agent of the Parole Board his consent to conduct a warrantless search of his premises. We adopt this approach because it accommodates the interests of both the Commonwealth and the parolee in having a parole system that can operate efficiently and fulfill its objectives. This approach accommodates important Commonwealth interests since it provides the flexibility that the Commonwealth needs to operate its parole system while at the same time protecting society from convicted criminals who choose to forego their lawful reintegration into society. This approach also accommodates the parolee because it protects the parolee by providing a check against state encroachment upon the parolee's limited Fourth Amendment right to be free from unreasonable searches.

Here, appellee signed a parole agreement acknowledging that agents of the Parole Board could conduct a warrantless search of his premises. *See* 37 Pa.Code §§ 65.6 and 67.3 (parolee acknowledges that he had read parole agreement, that he fully understands conditions of his parole and he agrees to follow such conditions); *See also Benefiel v. Com., Board of Probation and Parole,* 57 Pa. Cmwlth. 401, 403, 426

A.2d 242, 244 (1981) (obligation lies with parolee to acquaint himself with the conditions of his parole). In the performance of his official duties, the parole officer was instructed by his supervisor to contact appellee. Before making this contact, the parole officer received information from a confidential informant, who the parole officer believed to be reliable, that appellee was involved in dealing drugs. This information was independently corroborated by the parole agent after a conversation with the local police. This evidence established that the parole officer had a reasonable suspicion that appellee had violated the terms of his parole because such conduct was expressly prohibited by the terms of appellee's parole. *See Latta v. Fitzharris*, 521 F.2d 246, 252 (9th Cir.), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975) (possession of narcotics by parolee threatens both the parole system and the public since such an activity is both a violation of parole and a separate crime). When conducting the search, the evidence shows that the parole officer was acting reasonably within the scope of his official duties to insure that appellee was not violating his parole.[11] Accordingly, we hold that appellee's Fourth Amendment rights were not violated when the parole officer searched appellee's bedroom. Thus, the trial court correctly concluded that the items seized from appellee's bedroom should not have been suppressed.

(b) *Article I, Section 8*

 Since we have concluded that the search was proper under the Fourth Amendment, appellee argues in the

11. In *Pickron, supra,* this Court noted that evidence should be suppressed if the parole agent switches hats and acts as a "stalking horse" for the police by circumventing the requirement for a warrant. *Pickron,* 535 Pa. at 248, 634 A.2d at 1097. Here, the suppression court explicitly found that the parole agent who conducted the search was not acting in such a capacity. Moreover, appellee does not make a claim that the parole officer was acting as a stalking horse for the police when he was conducting the search and no evidence in the record even remotely suggests that the trial court erred in reaching this conclusion. *See United States v. Richardson,* 849 F.2d 439, 441 (9th Cir.), *cert. denied,* 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 141 (1988) (parole officer's search not unlawful just because it also benefits the police or that incriminating evidence found is turned over to police for use in criminal prosecution).

alternative that the evidence seized from his bedroom should be suppressed as being violative of his rights pursuant to Article I, Section 8 of the Pennsylvania Constitution. This Court has previously concluded that Article I, Section 8 provides greater protection than that provided by the Fourth Amendment. When determining whether the Pennsylvania Constitution provides greater protection than its counterpart in the federal constitution, this Court considers the following four factors set forth in *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991):

(1) the text of the Pennsylvania constitutional provision:

(2) the history of the provision, including Pennsylvania case law;

(3) related case-law from other states; and,

(4) policy considerations including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Edmunds,* 526 Pa. 374, 586 A.2d 887.

Although Article I, Section 8 of the Pennsylvania Constitution is similar in phraseology to that of the Fourth Amendment of the United States Constitution, this Court has held that Article I, Section 8 often provides greater protection since the core of its exclusionary rule is grounded in the protection of privacy while the federal exclusionary rule is grounded in deterring police misconduct. *Edmunds,* 526 Pa. at 398, 586 A.2d at 897; *Commonwealth v. Sell,* 504 Pa. 46, 65, 470 A.2d 457, 467 (1983). However, as appellee notes, this Court has never spoken to whether Article I, Section 8 provides greater protection to parolees than that afforded by the Fourth Amendment.

A number of courts in other states have confronted the issue of whether a parolee or probationer has greater rights under their own constitution with regards to warrantless searches by parole agents. Four state courts have concluded that a parolee has no greater rights under their state constitutions than that afforded by the Fourth Amendment. *See Reno v. State,* 882 S.W.2d 106 (Tex.Crim.App.1994); *People v.*

*Slusher,* 844 P.2d 1222 (Colo.Ct.App.1992), *cert. denied,* 509 U.S. 928, 113 S.Ct. 3050, 125 L.Ed.2d 735 (1993); *State v. Vailes,* 564 So.2d 778 (La.Ct.App.1990); *State v. Vega,* 110 Idaho 685, 718 P.2d 598 (Idaho.Ct.App.), *review denied,* 116 Idaho 466, 776 P.2d 828 (Idaho 1986). These courts have cited their own constitutions as authority in analyzing issues such as the one presented here, however, their analysis provides little insight in distinguishing their own constitutional protection from that accorded by the federal counterpart.

One case in which a distinguishing analysis was performed similar to that required by *Edmunds* was *State v. Lucas,* 56 Wash.App. 236, 783 P.2d 121 (1989), *review denied,* 114 Wash.2d 1009, 790 P.2d 167 (1990). In *Lucas,* a probationer signed a form giving consent to a warrantless search by a corrections officer. When two correction officers were conducting a transfer interview with the probationer at his residence, they noticed that he appeared nervous and stared at various items in the house while he was talking. The corrections officers then conducted a warrantless search of the residence and discovered drugs. The drugs were seized and after a trial, the probationer was found guilty of possession.

At trial and on appeal, the probationer argued that the evidence seized by the warrantless search should be suppressed on the grounds that the seizure violated his federal and state constitutional rights. The *Lucas* court rejected his federal claim. In examining the probationer's state constitutional claim, the *Lucas* court recognized that the Washington State Constitution provides broader protection to governmental searches than the Fourth Amendment because it is designed to protect a person's privacy interest. However, that court concluded that because a probationer who signs the consent form has a diminished right to privacy, the *Lucas* court did not believe that the state constitution provided greater protection than the federal constitution and held that the warrantless search of a probationer's residence "is reasonable if a police officer or a probation officer has a well founded suspicion that a probation violation has occurred." *Lucas,* 56 Wash.App. at 243–44, 783 P.2d at 126.

The California Supreme Court, another court which has often found that the California State Constitution affords a defendant broader protection against search and seizure than the Fourth Amendment, was faced with a parole search issue in *People v. Burgener*, 41 Cal.3d 505, 224 Cal.Rptr. 112, 714 P.2d 1251 (Cal.1986). In that case, a parolee, who was ultimately convicted of murder, moved to suppress a 7–Eleven bag with two $5 bills found by two investigating officers who conducted a warrantless search of his residence on the evening of the killing. The California Supreme Court refused to suppress the items found because the parole search at issue gave it no reason to articulate a different standard of legality under state and federal law. Based on this analysis of relevant case law from other states, it appears that other state constitutions do not bestow greater rights on parolee's than that provided by the Fourth Amendment of the United States Constitution in regards to a warrantless search of a parolee by parole officers even when the analysis is based upon a right to privacy as opposed to deterrence of police misconduct.

Under the final prong of the *Edmunds* analysis, the Court examines the policy considerations in invoking a greater protection based on state constitutional considerations. The policy concerns expressed above in the analysis of the legality of the search at issue under the Fourth Amendment also apply equally to consideration of the legality of the search under Article I, Section 8 of the Pennsylvania Constitution. Thus, policy reasons dictate that a parolee must expect to have a diminished right to privacy as a condition of being released from prison early and regaining his freedom from incarceration in order to insure an orderly transition from incarceration to freedom.

When all the *Edmunds* factors are weighed, we can find no justification from the parole search at issue in this case to discern a reason to articulate a different standard for the legality of the search under Article I, Section 8 of the Pennsylvania Constitution than under the Fourth Amendment of the United States Constitution. Therefore, we find that the trial

594

court correctly declined to suppress the evidence seized from appellee's bedroom.

## *CONCLUSION*

Accordingly, for the reasons stated above, we reverse the order of the Superior Court and reinstate the judgment of sentence entered by the trial court.