**George SHAW, Petitioner,**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 3, 1999.

Decided Jan. 13, 2000.

Daniel H. Glammer, Norristown, for petitioner.

Arthur R. Thomas, Harrisburg, for respondent.

Before PELLEGRINI, J., FRIEDMAN, J., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

George Shaw (Shaw) petitions for review of the April 19, 1999 order of the Pennsylvania Board of Probation and Parole (Board) denying his request for administrative relief from the Board's order of December 10, 1998, recommitting him to a state correctional institution as a technical parole violator for possession of weapons, ammunition, narcotics and drug paraphernalia as well as a cellular phone and beeper.

On October 16, 1991, Shaw began serving a six–to–20–year sentence for robbery and criminal conspiracy. After serving approximately six-and-one-half years, Shaw was paroled subject to conditions,[1] includ-

1. As special conditions of his parole, Shaw was prohibited from possessing any weapons or ammunition. Also, he was prohibited from possessing any drug paraphernalia and he

ing agreeing to allow parole agents to conduct warrantless searches of his person and property.[2] Based on an anonymous letter that was sent to the Board stating that Shaw was selling drugs and had weapons at his residence,[3] as well as Shaw's Supervising Parole Agent Joe Gillespie's (Gillespie) observations that Shaw was driving a 1992 Pontiac Grand Prix and wearing expensive clothes, even though unemployed, on January 20, 1998, when Shaw reported for his regularly scheduled appointment, Gillespie searched Shaw's automobile and found a black mask, a cellular phone, a pager, a single .45 caliber bullet, an ice pick and two baseball bats. Following the search of Shaw's automobile, Gillespie conducted a search of Shaw's residence where he found and seized narcotics, additional .45 caliber ammunition, drug paraphernalia and weapons. Shaw was charged with five violations of special parole conditions.

Before the Board, Shaw moved to dismiss all violations. He contended that neither the anonymous letter regarding his

sale of narcotics or possession of weapons nor Gillespie's observation that he was living a lifestyle inconsistent with his visible means of support were sufficient basis to conduct a warrantless search of his automobile and residence based on "reasonable suspicion." Because the searches were illegal, Shaw contended that the evidence obtained from them should be suppressed because the searches violated Article 1, Section 8 of the Pennsylvania Constitution's [4] prohibition against unreasonable searches. However, finding that there was "reasonable suspicion" to conduct the warrantless searches and that the evidence supported the fact that Shaw violated the conditions of parole, the Board recommitted Shaw to serve 24 months as a technical parole violator. Shaw then filed a Petition for Administrative Review and Relief with the Board. When his relief was denied, this appeal followed.[5]

As before the Board, Shaw contends that the evidence that Gillespie seized during the searches of his automobile and

was prohibited from possessing any cellular phone or beeper.

2. Specifically, the Agreement provides:

I expressly consent to the search of my person, property and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole. Any items, in [sic] the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process.

3. The exact text of the letter provides:

TO WHOM IT MAY CONCERN:
I AM A CONCERNED NEIGHBOR OF OAKDALE STREET IT HAS COME TO MY ATTENTION THAT OUR NEIGHBOR GEORGE SHAW OF 2314 WEST OAKDALE STREET HAS LOADED WEAPONS, IN THE PRIVACY OF HIS HOME HE IS ALSO DEALING NARCOTTICS [sic] LOADED WEAPONS ARE A DANGER TO OUR CHILDREN AND THE ELEMENTRAY [sic] SCHOOL ACROSS THE STREET FROM THE HOUSE ON OAKDALE STREET. [.]

4. Article 1, Section 8 of the Pennsylvania Constitution provides:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.
PA. CONST. art. I, § 8.
The language of the Fourth Amendment to the United States Constitution is substantially the same, providing:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the places to be searched, and the persons or things to be seized.
U.S. CONST. amend. IV.

5. The scope of review of a Board recommitment order is limited to determining whether the Board's decision is supported by substantial evidence, is in accordance with law, and is observant of the petitioner's constitutional rights. 2 Pa.C.S. § 704; Cromartie v. Board of Probation and Parole, 680 A.2d 1191 (Pa. Cmwlth.1996).

residence must be suppressed because the requisite "reasonable suspicion" did not exist of a parole violation necessary to conduct the searches and, even if it did exist, such warrantless searches are violative of Article 1, Section 8 of the Pennsylvania Constitution. Under Article 1, Section 8 of the Pennsylvania Constitution, warrantless searches and seizures are unreasonable and prohibited except for a few established exceptions, including probable cause. The rights a parolee has from warrantless searches under the Fourth Amendment to the United States Constitution or the Pennsylvania Constitution was addressed by our Supreme Court in *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031 (1997). In that case, the Court held that warrants based upon probable cause need not be obtained before a parole officer conducted a search of a parolee's residence because parole is a form of criminal punishment imposed after a guilty verdict, and states must have the necessary power over parolees in order to successfully administer a parole system and to insure an orderly transition from incarceration to freedom. *Williams.*

While allowing warrantless searches, the Court stated that they must be reasonable and it adopted a "middle ground" approach used by other state courts in addressing this issue. Under that approach, a parolee's signing of a parole agreement giving his parole officer permission to conduct a warrantless search does not mean either that the parole officer can conduct a search at any time and for any reason or that the parolee relinquishes his Fourth Amendment right to be free from unreasonable searches, but rather acts as an acknowledgement that the parole officer has a right to conduct reasonable searches of his residence listed on the parole agreement without a warrant. In *Williams,* the Court also stated that a search is reasonable if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation and (2) that the search was reasonably related to the parole officer's duty.[6] The Court stated that it adopted this approach [7] because:

> [I]t accommodates the interests of both the Commonwealth and the parolee in

6. Section 27a of the Probation and Parole Act, Act of August 6, 1941, P.L. 323, § 27.1 *added by* Act of November 17, 1995, P.L. 1139, 61 P.S. § 331.27a(d)(6), authorizes state parole agents to perform searches where they have reasonable suspicion to believe that real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision. Section 27a also enumerates factors to be considered in determining whether reasonable suspicion exists, including (1) the observations of agents; (2) information provided by others; (3) the activities of the offender; (4) information provided by the offender; (5) the experience of agents with the offender; (6) the experience of agents in similar circumstances; (7) the prior criminal and supervisory history of the offender; and (8) the need to verify compliance with the conditions of supervision. *See* Section 27a(d)(6) of the Probation and Parole Act.

7. The Court cited to the following other cases in support of its adoption of this "middle ground" approach: *Williams v. State of Arkansas*, 321 Ark. 344, 902 S.W.2d 767, *cert.* denied, 516 U.S. 1030, 116 S.Ct. 676, 133 L.Ed.2d 525 (1995) (gun seized in warrantless search of parolee by parole officer not suppressed in murder trial because parole agreement to submit to warrantless search was valid where facts demonstrated that parole officer had reasonable grounds to investigate possible parole violation); *Pena v. State*, 792 P.2d 1352 (Wyo.1990) (adopted middle ground approach and did not suppress drugs found in search by parole officer because reasonable grounds existed for the search); *People v. Boyd*, 224 Cal.App.3d 736, 274 Cal.Rptr. 100 (Cal.Ct.App.1990) (parole search can be authorized by parole agreement where parole officer had reasonable suspicion that parolee had violated terms of his parole and that handbag found during search may have belonged to parolee; thus, handbag and items inside were not suppressed); *State v. Johnson*, 748 P.2d 1069 (Utah 1987) (using middle ground approach, Utah Supreme Court refused to suppress stolen check found by parole officer during a warrantless search of parolee's room because parole officer had reasonable suspicion that parolee had committed a parole violation and search was reasonably related to parole officer's duties).

having a parole system that can operate efficiently and fulfill its objectives. This approach accommodates important Commonwealth interests since it provides the flexibility that the Commonwealth needs to operate its parole system while at the same time protecting society from convicted criminals who choose to forego their lawful reintegration into society. This approach also accommodates the parolee because it protects the parolee by providing a check against state encroachment upon the parolee's limited Fourth Amendment right to be free from unreasonable searches.

547 Pa. at 589, 692 A.2d at 1037.

■ As to whether "reasonable suspicion" existed to search Shaw's automobile and residence, in *Commonwealth v. Green*, 405 Pa.Super. 24, 591 A.2d 1079 (1991), our Superior Court addressed whether such evidence could be used in a criminal case based on almost the identical reasons proffered to support the search in this case. It found that "reasonable suspicion" existed to justify the search of a parolee's residence when the parole officer received an anonymous call that parolee may have been involved in drug trafficking and where surveillance of the parolee revealed that parolee was driving a late model Cadillac, which he attempted to conceal from his parole agent and possessed what appeared to be expensive jewelry, which parole agents felt that he would not be able to afford with his visible income. *Id.*[8] Accordingly, an anonymous letter as well as his parole agent's observations of his lifestyle created the "reasonable suspicion"

that Shaw had violated his parole, as needed for Gillespie to conduct the searches in question.

Even if the search was conducted with "reasonable suspicion," Shaw contends that the evidence should still be suppressed as being violative of Article I, Section 8 of the Pennsylvania Constitution, because, without saying as much, our Supreme Court, in *Scott v. Board of Probation and Parole*, 548 Pa. 418, 698 A.2d 32 (1997), later reversed by the United States Supreme Court, *Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998), held that a warrantless search without probable cause of a parolee's residence by a parole agent is unconstitutional under the Fourth Amendment to the United States Constitution. This argument is based on the presumption that because our Supreme Court in *Scott* found that such searches were unconstitutional under the Fourth Amendment to the Federal Constitution, had the search also been challenged under Article I, Section 8 of the Pennsylvania Constitution, our Supreme Court would have found such searches unconstitutional on state constitutional grounds as well. Presumably, Shaw makes this argument because our Supreme Court has often interpreted Article I, Section 8 of the Pennsylvania Constitution to afford greater protection than that afforded under the Fourth Amendment. Furthermore, because the application of Article I, Section 8 is a state constitutional matter, it would not be subject to United States Supreme Court review.

**8.** Likewise, in *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the United States Supreme Court found that a search of a probationer's residence by a probation officer was reasonable where the probation officer received information from a police officer that the probationer had or might have had guns. The Court stated that in some cases, especially those involving drugs or illegal weapons, the probation agency must be able to act upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before

a probationer does damage to himself or society. *Griffin*. As such, the Court found that the information received by the probation officer supported a reasonable search, whether or not the information was based on firsthand knowledge of the police officer. Also, the Court stated that because the very assumption of the probation system is that the probationer is in need of rehabilitation and is more likely than the ordinary citizen to violate the law, it is enough that the information provided indicated only the likelihood of facts justifying the search. *Id.*

However, the only time our Supreme Court has four-squarely addressed this issue was again in *Williams,* 547 Pa. 577, 692 A.2d 1031 (1997), where it specifically held that Article 1, Section 8 of the Pennsylvania Constitution did not afford greater protection than the Fourth Amendment against warrantless searches of a parolee's residence. Rejecting that argument, Justice Castille, writing for a unanimous court, stated:

Although Article I, Section 8 of the Pennsylvania Constitution is similar in phraseology to that of the Fourth Amendment of the United States Constitution, this Court has held that Article I, Section 8 often provides greater protection since the core of its exclusionary rule is grounded in the protection of privacy while the federal exclusionary rule is grounded in deterring police misconduct. *Edmunds,* 526 Pa. at 398, 586 A.2d at 897; *Commonwealth v. Sell,* 504 Pa. 46, 65, 470 A.2d 457, 467 (1983). However, as appellee notes, this Court has never spoken to whether Article I, Section 8 provides greater protection to parolees than that afforded by the Fourth Amendment.

\* \* \*

The policy concerns ... in the analysis of the legality of the search at issue under the Fourth Amendment also apply equally to consideration of the legality of the search under Article I, Section 8 of the Pennsylvania Constitution. Thus, policy reasons dictate that a parolee must expect to have a diminished right to privacy as a condition of being released from prison early and regaining his freedom from incarceration in order to insure an orderly transition from incarceration to freedom.

When all the *Edmunds* factors are weighed, we can find no justification from the parole search at issue in this case to discern a reason to articulate a different standard for the legality of the search under Article I, Section 8 of the Pennsylvania Constitution than under the Fourth Amendment of the United States Constitution.

547 Pa. at 593, 692 A.2d at 1039.

Because the policy considerations behind searches of parolees' residences by parole agents are the same, our Supreme Court in *Williams* held that Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution are to be interpreted in lockstep. While our Supreme Court in *Scott* believed that the Fourth Amendment (and presumably Article I, Section 8 of the Pennsylvania Constitution) required the exclusion of evidence, once the United States Supreme Court found that the Fourth Amendment did not require such an exclusion, under *Williams'* precept, those provisions are to be interpreted the same and evidence should not be excluded under the Pennsylvania Constitution because it is not excluded under the Fourth Amendment.[9]

Accordingly, because there was "reasonable suspicion" that Shaw had violated his parole justifying the warrantless search, and the warrantless search was not unconstitutional under the Pennsylvania Constitution, the decision of the Board is affirmed.

### ORDER

AND NOW, this 13th day of January, 2000, the decision of the Pennsylvania Board of Probation and Parole dated April 19, 1999, Parole No. 9039–O, is affirmed.

---

9. In *Scott,* the United States Supreme Court stated: "[W]e have repeatedly declined to extend the evidence rules to proceedings other than criminal trials." Similarly, no Pennsylvania case could be found that extends the exclusionary rule under Article I, Section 8 of the Pennsylvania Constitution to anything other than criminal proceedings.