J-S49020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN ARTHUR SNYDER | |
| Appellant | No. 3069 EDA 2013 |

Appeal from the Judgment of Sentence September 19, 2013
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001691-2012

BEFORE:  OLSON, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:          **FILED FEBRUARY 13, 2015**

Steven Arthur Snyder appeals from the judgment of sentence imposed on September 19, 2013, in the Court of Common Pleas of Monroe County. A jury found Snyder guilty of possession with intent to deliver (PWID), possession of a controlled substance, possession of drug paraphernalia, and conspiracy.[1] The trial court sentenced him to an aggregate sentence of 22 months to five years' imprisonment. Thereafter, the trial court granted Snyder's motion for reconsideration of sentence and made him eligible for the State Motivational Boot Camp program. Snyder presents two questions: (1) "Did the parole officers have the requisite reasonable suspicion to justify a warrantless search of the accused's purported residence and then use the

---

[1] 35 P.S. § 780-113(a)(30), (a)(16), (a)(32), and 18 Pa.C.S. § 907, respectively.

evidence seized as the basis to obtain a search warrant?" and (2) "Whether the evidence was sufficient to prove all of the elements of possession with intent to deliver beyond a reasonable doubt where the primary evidence of such offense was the conclusion of the police detective that the items found were for 'redistribution of marijuana'?". Snyder's Brief at 5.

With regard to Snyder's first issue, the suppression court has summarized the evidence as follows:

> At the time of the search in November 2011, [Snyder] was on probation following a driving under the influence conviction. On August 17, 2011 he signed the rules and regulations for supervision by the Monroe County Probation Department, which included a notification that [Snyder] inform the probation department of any changes in residence within 72 hours of the change.
>
> The Monroe County Probation Department received information that [Snyder] was not living at the address [Snyder] initially provided, but was instead residing at 1127 Mt. Tom Road and was in possession of a firearm – both violations of the terms of his probation.[2] On November 30, 2011, Probation Officer Bernard Sikora, and two other probation officers, went to [Snyder's] residence. Outside the residence were two vehicles and one trailer, all registered to [Snyder]. When the probation officers arrived, a woman, looking out a window, asked what they were doing. The officers asked her where [Snyder] lived, and the woman pointed to the corner apartment. [Snyder] later identified the woman as his grandmother.
>
> When Officer Sikora knocked on the door, [Snyder] opened the door to the residence. [Snyder] stated that he did not live

_____

[2] When Snyder was placed on probation, he had provided an address other than the Mt. Tom Road address, and indicated that he was living with his mother. *See* N.T., 3/4/2013, at 15–16.

there, however he turned around and the probation officers were able to enter the residence.

The kitchen area and living room are an open floor plan. Officer Sikora requested that [Snyder] show him his room. Off of the kitchen, [Snyder] brought Officer Sikora to a bedroom that appeared to be a child's room.

When asked again where his bedroom was, [Snyder] then indicated an area "around back of the kitchen." When Officer Sikora left the kitchen there was a small hallway, and off that hallway was a small office and then a bedroom. When Officer Sikora entered the hallway, he testified he could smell marijuana. Officer Sikora then observed marijuana on top of the desk in the office area. [Snyder] was secured in handcuffs and the marijuana was also secured. Detective Burns, of the Monroe County District Attorney's Office was called and asked to obtain a search warrant for the residence. No further search was conducted at that time by the probation officers. The probation officers did also note that [Snyder's] wallet was in the residence and there was a carbon copy of a traffic ticket in [Snyder's] name, hanging on the refrigerator.

A search warrant was subsequently obtained for "The residence of Steven A. Snyder located at 1129 Mt. Tom Road, Smithfield Township, Monroe County[,] Pennsylvania and all of Steven A. Snyder's vehicle located on said property." The warrant includes a description of the residence.

Suppression Court Opinion, 4/24/2013, at 2–3.

The suppression court, by order entered April 24, 2013, denied Snyder's motion to suppress. Snyder proceeded to trial and was convicted and sentenced as stated above. Following the denial of his post sentence motion, Snyder filed this appeal.[3]

_____

[3] Snyder timely complied with the order of the trial court to file a statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

- 3 -

Our standard of review of a trial court's denial of a pre-trial motion to suppress evidence is well established:

> An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Smith*, 85 A.3d 530, 534 (Pa. Super. 2014) (citations omitted).

Snyder argues the probation officers "did not have the requisite reasonable suspicion to justify a warrantless search of the premises where [Snyder] was merely present[.]" Snyder's Brief at 10. Specifically, Snyder argues: "Here the probation officers were not investigating any criminal activity of [Snyder] and he was not engaged in any incriminating conduct at the time he answered the door. They were merely trying to determine whether [Snyder] changed his residence." *Id.* at 14. Moreover, Snyder argues a probation officer must have prior approval for a property search. *See id.*

Snyder further claims there were no exigent circumstances, since from the officers' position at the doorway no contraband was in plain view. He also asserts that even though he signed a consent to search as a condition

- 4 -

of his probation, the probation officer was still required to have reasonable suspicion. *Id.* at 15, *citing* **Commonwealth v. Wilson**, 692 A.2d 1031, 1037 (Pa. 1997). Snyder maintains the probation officers were not lawfully in the premises when they observed and seized the items found in the apartment. *See id.* at 15.

At the time of the search, Officer Sikora was a supervisor with the Monroe County Office of Probation and Parole. N.T., 3/4/2013, at 4. Therefore, Officer Sikora derived his authority from 42 Pa.C.S. § 9122, "Supervisory relationship to offenders," which provides, in relevant part:

> (b) *Searches and seizures authorized.*
>
> (1)    Officers and, where they are responsible for the supervision of county offenders, State parole agents, may search the person and property of offenders in accordance with the provisions of this section.
>
> ****
>
> (iii)    Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.
>
> (c) *Effect of violation.* --No violation of this section shall constitute an independent ground for suppression of evidence in any probation or parole proceeding or criminal proceeding.
>
> (d) *Grounds for personal search of offender.*
>
> (1)    A personal search of an offender may be conducted by an agent:

(i)      if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision;

(ii)      when an offender is transported or taken into custody; or

(iii)     upon an offender entering or leaving the securing enclosure of a correctional institution, jail or detention facility.

(2)    A property search may be conducted by an officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

(3)    Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances. No prior approval shall be required for a personal search.

****

(6)    The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i)      The observations of agents.

(ii)     Information provided by others.

(iii)    The activities of the offender.

(iv)    Information provided by the offender.

> (v)     The experience of agents with the offender.
>
> (vi)    The experience of agents in similar circumstances.
>
> (vii)   The prior criminal and supervisory history of the offender.
>
> (viii)  The need to verify compliance with the conditions of supervision.

42 Pa.C.S. § 9122(b)(1)(iii), (d)(1)-(3), (6).

The statute provides that a probation officer may not conduct a search that would violate a probationer's constitutional rights. *Id.* at § 9122(b)(1)(iii). Rather, the officer must have **reasonable suspicion** that a probationer possesses contraband or other evidence of a violation of the terms of his probation before he conducts a warrantless property search. *Id.* at § 9912(d)(2). Further, while the statute proscribes a "property search"[4] in the absence of either exigent circumstances or prior approval from a supervisor, it also states that "**[n]o violation of this section shall constitute an independent ground for suppression of evidence** in any probation or parole proceeding or criminal proceeding." *Id.* at 9122(c),(d)(3) (emphasis supplied). Accordingly, under the clear terms of the statute, evidence recovered during a warrantless search of a

_____

[4] A "property search" is defined as "[a] warrantless search of real property, vehicle or personal property which is in the possession or under the control of an offender."  42 Pa.C.S. § 9911.

probationer's person or property is subject to suppression only if the search was conducted in violation of the probationer's constitutional rights.

Here, the suppression court determined that Officer Sikora possessed reasonable suspicion to search the residence for evidence that Snyder was living at an unapproved residence, explaining:

> [T]here are a number of [] factors that indicate that the probation officers reasonably concluded that, as the Pennsylvania State Police said, [Snyder] was residing at the Mt. Tom residence[, an unapproved residence].
>
> In addition to the information from the police [that Snyder was not living at the address he initially provided, and was in possession of a firearm], three vehicles on the property were registered to [Snyder]. Last, when probation officers arrived at the Mt. Tom [Road] residence on the day of the search, a woman that [Snyder] later identified as his grandmother, pointed to the residence in response to the question of "where Steven Snyder lived."
>
> We conclude from these facts that the probation officers had a reasonable suspicion that [Snyder] had committed a probation violation in failing to inform the Probation Department of any address change, as required by the rules and regulations of his probation. It is well settled that warrantless probation searches are constitutional based on a probationer's lessened expectation of privacy. Acting upon reliable information from Pennsylvania State Police regarding the violation, receiving confirmance [sic] of [Snyder's] residence from [Snyder's] grandmother and the presence of a number of vehicles registered to [Snyder] at the property, probation officers conducted a lawful warrantless walk-through of the apartment.
>
> The warrantless search of the residence initiated by probation officers was directly related to the suspected probation violation. The probationer provides limited consent to warrantless searches by signing the probation agreement. *Commonwealth v. Williams*, 692 A.2d 1031 (Pa. 1997). However, a search is only reasonable where the probation

officers have a reasonable suspicion that the probationer has committed a violation of the rules and regulations of probation and the search is reasonably related to the probation officer's duty to assure compliance with the rules and regulations of probation." **Commonwealth v. Hughes**, 836 A.2d 893 (Pa. 2003).

The probation officers in the instant case acted upon information from the Pennsylvania State Police that not only was [Snyder] residing at an address other than the address provided to the probation department, but also that [Snyder] was in possession of prohibited firearms. No firearms were located. However, the test for reasonable suspicion is not considered from the knowledge gained after a search, but rather considers the information known to officers at the time of the initiated search. At the time of the search, the officers had reliable information that required a home visit to determine whether there were firearms in the residence and determine whether [Snyder] was residing at the Mt. Tom [Road] address.

Suppression Court Opinion, 4/24/2013, at 4–6.

We agree with the above sound analysis. Applying the factors set forth in Subsection 9122(d)(6) to the facts of this case, we find the record supports the suppression court's determination that Officer Sikora had reasonable suspicion that warranted the search of the residence. Therefore, we reject Snyder's claim to the contrary.

Further, Snyder argues the search warrant authorized the search of the wrong apartment, and, as such, was invalid.[5] However, Snyder's

---

[5] The suppression court noted Snyder had not raised the issue in his suppression motion, but rather had raised the issue in his brief in support of the motion. Despite Snyder's failure to include the argument in the motion to suppress, the court addressed the issue, and this Court will also do so, since the issue was considered by the court in denying the motion. **See** Suppression Court Opinion, 4/24/2013, at 6.

argument ignores the fact that, although the warrant was issued for 1129 Mt. Tom Road, as opposed to 1127 Mt. Tom Road, the warrant included a detailed description of the residence to be searched, and "[a]ll descriptions of the searched residence at 1127 Mt. Tom Road corroborate [the warrant's] description of the residence."[6] Suppression Court Opinion, 4/24/2013, at 7. As such, no relief is due on this claim. *See Commonwealth v. Belenky*, 777 A.2d 483, 487 (Pa. Super. 2001) (incorrect address did not invalidate warrant where description in the affidavit matched appellant's apartment in every other respect and did not affect ability to identify the premises to be searched).

Accordingly, we conclude Snyder's challenges to the denial of his suppression motion present no basis upon which to disturb the decision of the suppression court.

The final argument raised by Snyder is as follows:

> The evidence was insufficient to prove all of the elements of possession with intent to deliver beyond a reasonable doubt where the primary evidence of such offense was the conclusion of the police detective that the items found were for redistribution.

---

[6] "The application state[d], 'the residence is an apartment on the left side of a two story beige or yellowish house. The apartment has a screened in porch with a white door leading to the apartment.' [Application for Search Warrant, 11/30/11]." Suppression Court Opinion, 4/24/2013, at 7.

Snyder's Brief at 16. As such, Snyder is contending the Commonwealth failed to prove the element of intent to deliver the marijuana found at his residence.

Snyder's Rule 1925(b) statement, however, only includes a sufficiency challenge with regard to the element of actual physical or constructive possession, and a challenge to the court's evidentiary ruling in qualifying the Commonwealth's witness to testify as an expert.[7] We further note that the trial court's opinion did not address the issue of sufficiency of the evidence with regard to the element of intent to deliver. **See** Trial Court Opinion, 12/18/2013. Therefore, we conclude that Snyder's final issue has been waived.[8]

Accordingly, we affirm.

Judgment of sentence affirmed.

_____

[7] **See** Snyder's Pa.R.A.P. 1925(b) Statement, 11/25/2013 ("[T]here was no evidence that [Snyder] was in actual physical or constructive possession of any of the controlled substances and contraband and/or currency found in the apartment occupied by his girlfriend and not [Snyder]. The court also erred in allowing a detective from the Monroe County Drug Task Force to testify as an expert.").

[8] In any event, this argument is meritless. **See Commonwealth v. Watley**, 81 A.3d 108, 114 (Pa. Super. 2013) (noting standard of review of sufficiency claim requires that appellate court view the evidence admitted at trial, and all reasonable inferences drawn therefrom, in a light most favorable to the Commonwealth as verdict winner; recognizing expert testimony, while not necessary, "can be beneficial"), *appeal denied*, 95 A.3d 277 (Pa. 2014).

J-S49020-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/13/2015