J-S01011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FRANCIS A. CRUZ-RIVERA | : | |
| | : | |
| Appellant | : | No. 680 MDA 2020 |

Appeal from the Judgment of Sentence Entered February 25, 2020
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0006387-2018

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:               **FILED FEBRUARY 2, 2021**

Francis A. Cruz-Rivera appeals from the judgment of sentence, entered in the Court of Common Pleas of Lancaster County, after a jury found him guilty of persons not to possess, use or control a firearm.[1]  After careful review, we affirm based on the well-reasoned and thoughtful opinions authored by the Honorable Donald R. Totaro.

In 2009, Cruz-Rivera was convicted of aggravated assault and conspiracy to commit aggravated assault; he was sentenced to 4-10 years' imprisonment and was released on parole supervision on August 5, 2015.  As a condition of his parole, Cruz-Rivera was prohibited from lawfully possessing a firearm.  On May 31, 2018, Cruz-Rivera was cited for harassing his estranged

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).

wife, Jesmarie Cruz-Rivera. Following the citation, Cruz-Rivera was placed on a Global Positioning System (GPS) monitor, was subject to a curfew, and entered into an agreement with Jesmarie that they would seek domestic violence counseling.

In June of 2018, parole agent Chad Renner assumed the role of Cruz-Rivera's supervising parole officer. N.T. Suppression Hearing, 5/17/19, at 9. Renner had been employed as a parole agent since 2012. *Id.* at 8. When Renner took over as Cruz-Rivera's parole agent, he found out that Cruz-Rivera had been cited for harassment in May 2018 with regard to his estranged wife. *Id.* Subsequently, on October 23, 2018, Jesmarie reported to Agent Renner that Cruz-Rivera had threatened her with a firearm and that he was selling drugs. *Id.* at 11. Jesmarie prepared a signed, written statement for Agent Renner, in which she stated that Cruz-Rivera was going to shoot her, *id.* at 36, and wanted to control her, *see* Commonwealth's Exhibit 1, 10/23/18, at 1; she also listed, in detail, three cars that Cruz-Rivera drives, and indicated that she and Cruz-Rivera had been arguing over legal ownership of a vehicle. *Id.* Although not included in her written statement, Agent Renner testified that Jesmarie verbally told him that Cruz-Rivera had recently threatened her with a gun, that she had seen the gun, that the firearm was black and stored in a blue pouch that Cruz-Rivera wears across his chest, and that Cruz-Rivera was selling cocaine. Agent Renner further testified that Jesmarie told him that the gun and drugs were found in Cruz-Rivera's residence (that she frequented)

and in vehicles that he had access to and often drove, including a blue minivan. *Id.* at 11-12.

On October 24, 2018, the court granted Jesmarie's petition and entered a temporary Protection from Abuse (PFA) Act[2] order against Cruz-Rivera that effectively prevented him from abusing, harassing, stalking or threatening Jesmarie or her minor child, A.M-M. *See* Temporary Protection From Abuse Order, 10/24/18, at 1. The petition also cautioned that Cruz-Rivera possessed a weapon and that it was present on his property. *Id.* A hearing on the matter was scheduled for October 31, 2018.[3]

On October 24, 2018, after obtaining approval from his supervisor, Agent Renner and several other parole agents went to Cruz-Rivera's residence, located at 113 Ruby Street in Lancaster, to detain him and search the premises for drugs and the firearm. When the agents received no response after knocking on the front door for several minutes, they entered an unlocked back door and performed a warrantless search of the house. Agents uncovered drug paraphernalia (rubber gloves, bleach and small rubber bands) and Cruz-Rivera's cell phone, which contained photographs of a gun in the home. Parole agents Dennis Hartlove and Christina Zborovian searched an unlocked, blue minivan in the driveway behind the residence. Agent

---

[2] *See* 23 Pa.C.S. §§ 6101-6122.

[3] On December 19, 2018, Cruz-Rivera agreed to a final, three-year PFA order with regard to Jesmarie. Cruz-Rivera, however, did not enter an admission of guilt.

- 3 -

Zborovian entered the passenger-side of the vehicle and immediately found, in plain view, a blue shoulder satchel/pouch containing a loaded, black Kel-Tec 9mm handgun on the passenger-side floor between the second and third rows of seats. The minivan was registered to Cruz-Rivera's mother; however, Cruz-Rivera had access to the vehicle and had driven it before. Following the search, the agents took Cruz-Rivera into custody at his place of employment and charged him with persons not to possess a firearm, terroristic threats with intent to terrorize another,[4] and receiving stolen property.[5]

On April 11, 2019, Cruz-Rivera filed a pre-trial motion to suppress the evidence uncovered from the warrantless search of his house and the blue minivan. On May 17, 2019, the court held a suppression hearing, at which parole agents Renner, Hartlove, and Zborovian testified. At the hearing, the Commonwealth entered into evidence Zborovian's written statement, Cruz-Rivera's supervision history, the 2018 temporary PFA order against Cruz-Rivera, and a photograph of the inside of the blue minivan and the items that were located inside of that vehicle (including the blue shoulder pouch and the firearm). Following the hearing, the court ordered counsel to file legal memoranda addressing the issues raised at the suppression hearing and in Cruz-Rivera's pre-trial motion, as well as the issue of bifurcating all three

---

[4] 18 Pa.C.S. § 2706(a)(1).

[5] 18 Pa.C.S. § 3925(a).

counts of the criminal information. Order, 5/17/19. On August 26, 2019, the court entered an order denying the suppression motion;[6] the order was accompanied by a sixteen-page opinion detailing the trial judge's findings of fact and conclusion that "the search of [Cruz-Rivera's] home and vehicle was grounded in reasonable suspicion and was reasonably related to his parole agent's duty." Trial Court Suppression Opinion, 8/26/18, at 11. Cruz-Rivera proceeded to a two-day jury trial, after which he was found guilty of the above-cited firearm offense.[7] On February 25, 2020, the court sentenced Cruz-Rivera to 4½-10 years of incarceration.

Cruz-Rivera filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following issue: "Did the trial court err in denying [his] [o]mnibus [p]re[-t]rial [m]otion to [s]uppress where the parole agent did not have reasonable suspicion that a parole violation had occurred to search [his] property, and where the search was not reasonably related to the parole agent's duty?" Appellant's Brief, at 4.

---

[6] In the same suppression order, the court granted the Commonwealth's motion to introduce evidence relating to the temporary PFA petition filed by Jesmarie against Cruz-Rivera on October 24, 2018, and the final PFA order entered by agreement on December 19, 2018. *See supra* n.3. The Commonwealth argued that the evidence should be admissible under Pa.R.E. 404(b), as evidence of prior bad acts, alleging that Jesmarie filed the petition, in part, because she was afraid of retribution by Cruz-Rivera for her notifying his parole agent about him threatening to shoot her. *See* Trial Court Suppression Opinion, 8/26/19, at 12.

[7] The Commonwealth *nolle prossed* the remaining counts of terroristic threats and receiving stolen property.

When reviewing the denial of a suppression motion, our Court must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are in error. ***Commonwealth v. Gray***, 896 A.2d 601, 603 (Pa. Super. 2006). "This Court may consider only the evidence of the prosecution and so much of that of the defense that remains uncontradicted when read in the context of the entire record." ***Id.*** at 604 (citation omitted).

Here, Cruz-Rivera asserts that the trial court improperly denied his suppression motion because parole agents lacked probable cause to search his residence where: they did not personally observe him commit any parole violation; they relied on a self-motivated and uncorroborated statement made by Cruz-Rivera's estranged wife; they lacked information possessed by Cruz-Rivera; and Cruz-Rivera had a "largely compliant supervisory history." Appellant's Brief, at 14. Cruz-Rivera also claims that because the agents lacked probable cause to search his residence, any contraband or items found in the searched vehicle are fruits of the poisonous tree and should also have been suppressed.

> It is well-established that
>
> in exchange for early release from prison, [a] parolee cedes away certain constitutional protections enjoyed by the populace in general. Because the very assumption of the institution of parole is that the parolee is more likely than the ordinary citizen to violate the law, the parole agents need not have probable cause to search a parolee or his property; instead[,] reasonable suspicion is sufficient to authorize a search.

***Commonwealth v. Murray***, 174 A.3d 1147, 1155 (Pa. Super. 2017) (citation omitted). ***See Commonwealth v. Williams***, 692 A.2d 1031, 1035 (Pa. 1997) (parolee has limited Fourth Amendment rights due to diminished expectation of privacy).

> [A] parolee, under both statutory authority and case law, . . . has less constitutional search and seizure protections than the regular citizen. However, . . . parolees still have limited constitutional protections relative to warrantless searches. **Parole officers may perform a search of a parolee's residence where the totality of the circumstances demonstrates reasonable suspicion that evidence of contraband or a violation of parole will be discovered**. 61 Pa.C.S. § 6153.

***Commonwealth v. Coleman***, 130 A.3d 38, 42 (Pa. Super. 2015) (emphasis added). ***See*** 61 Pa.C.S. § 6153 (d)(2) ("A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.").

"In Pennsylvania, a search of a parolee's property will be deemed reasonable if the evidence shows that: (1) the parole officer had reasonable suspicion that the parolee committed a parole violation; and (2) the search was reasonably related to the parole officer's duty." ***Williams***, 692 A.2d at 1036. Moreover, pursuant to subsection 6153(d)(6):

> The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:
>
> (i) The observations of agents.
> (ii) Information provided by others.

(iii) The activities of the offender.
(iv) Information provided by the offender.
(v) The experience of agents with the offender.
(vi) The experience of agents in similar circumstances.
(vii) The prior criminal and supervisory history of the offender.
(viii) The need to verify compliance with the conditions of supervision.

*Id.* at (d)(6)(i-viii).

After reviewing the parties' briefs, the certified record on appeal, and the relevant case law, we agree that the trial court properly denied suppression of the evidence uncovered from the search of Cruz-Rivera's residence and the blue minivan. Considering Cruz-Rivera's prior conviction for aggravated assault, his parole condition prohibiting him from possessing a firearm, and his history of domestic threats and violence toward his ex-wife, it was reasonable for Agent Renner to believe that the situation created an immediate public safety concern. Moreover, Jesmarie's reliability as an informant was established based on her past, credible reports of threats made against her by Cruz-Rivera. *See* 61 Pa.C.S. § 6153(d)(6); *see also Commonwealth v. Gould*, 187 A.3d 927, 936 (Pa. Super. 2018) (parole officers need not personally observe parolee engage in illegal activity or suspicious conduct in order to form reasonable suspicion of parole violation but, instead, may rely on information provided by reliable third-party). Finally, the court correctly concluded that the warrantless search of Cruz-Rivera's property was reasonable where the evidence showed that Agent Renner, who had extensive experience as a parole agent, had reasonable suspicion to believe that Cruz-Rivera committed a parole violation and where

the search was reasonably related to his duty as a parole officer. ***Williams***, ***supra***.

We rely upon Judge Totaro's cogent opinions, dated August 26, 2019 and June 22, 2020, to affirm the trial court's suppression order. We instruct the parties to attach a copy of Judge Totaro's decisions in the event of further proceedings in the matter.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/02/2021

35_Opinion-Order Denying Omnibus Pre-Trial Motion - Denying in Part and Granting in Part Comm. Notice

Circulated 01/25/2021 04:17 PM

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**CRIMINAL**

COMMONWEALTH OF PENNSYLVANIA     :
    :
    vs.     :     No.     CP-36-CR-0006387-2018
    :
FRANCIS CRUZ-RIVERA     :

## OPINION

On December 2, 2010, Francis Cruz-Rivera ("Defendant") was convicted of aggravated assault and criminal conspiracy to commit aggravated assault. (Notes of Testimony, Suppression Hearing at 41-42) ("N.T.").[1] On March 25, 2011, the court imposed a sentence of four to ten years incarceration in the state correctional institution ("SCI"). *Id.* Defendant was released from SCI on August 5, 2015, at which time his parole supervision began. *Id.* at 38-39.

State Parole Agent Chad Renner ("Renner"), who worked for the Pennsylvania Board of Probation and Parole, began supervising Defendant's parole in June 2018. (N.T. at 8-9). Renner was aware of a domestic violence incident involving Defendant and his wife, Jesmarie Cruz-Rivera ("Jesmarie"), which occurred on May 31, 2018, where Defendant was cited for harassment. *Id.* at 9. In that case, Defendant was placed on a GPS monitor and agreed to undergo domestic violence counseling. *Id.* at 9-10. After that incident, Jesmarie was told to contact the parole office if there were any future problems with Defendant. *Id.* at 10-11.

On October 23, 2018, Jesmarie met with Agent Renner to report that Defendant had threatened to shoot her with a gun during a verbal argument. (N.T. at 11). Jesmarie further reported that Defendant was involved in the sale of narcotics or cocaine. *Id.* According to

---

[1] According to the prosecutor, Defendant was convicted of these crimes after he and co-conspirator Luis Velez-Mercado shot a gun multiple times. (N.T. at 76).

Jesmarie, Defendant kept the drugs and firearm in his house and in a blue minivan. *Id.* As a result of this information, Renner and other state parole agents conducted a search the following day of Defendant's residence and a blue minivan located on Defendant's property. *Id.* at 13-21. Agents found a firearm inside the minivan. *Id.* at 21. Thereafter, Defendant was charged with persons not to possess a firearm, terroristic threats with intent to terrorize another, and receiving stolen property. *See* Criminal Information.[2]

On April 11, 2019, Defendant filed a motion to suppress evidence obtained from the search of his home and vehicle, by alleging that Jesmarie's statement did not provide reasonable suspicion to conduct a search because it was insufficiently detailed, uncorroborated, and originated with a potentially biased source; there was no reasonable relation between Jesmarie's allegations and the search of Defendant's property; and in the alternative there was no reasonable suspicion to search the vehicle in Defendant's yard after the search of his home yielded no contraband or evidence of violations of his supervision. *See* Omnibus Pretrial Motion.

A suppression hearing was held on May 17, 2019, both counsel have filed briefs, and this matter is now ripe for disposition. Consequently, the suppression court makes the following findings of fact and conclusions of law.

At the suppression hearing, Renner testified that Jesmarie contacted him on October 23, 2018 to report that Defendant threatened her with a black handgun and he was selling drugs. (N.T. at 11-12). The threat was made in person, it was recent, and Jesmarie had previously seen the gun. *Id.* at 31-33. Jesmarie stated that Defendant kept the gun and drugs at various locations, including in his house and in vehicles at the residence. *Id.* at 11. Renner was aware that

---

[2] 18 Pa.C.S.A. § 6105(a)(1); 18 Pa.C.S.A. § 2706(a)(1); and 18 Pa.C.S.A. § 3925(a).

Jesmarie frequented Defendant's residence. *Id.* at 32. Furthermore, she stated the handgun was kept in a blue pouch. *Id.* at 12. Renner found that Jesmarie was providing credible information because she had always been credible in the past, including when she reported previous threats made by Defendant, and she was providing this recent information directly to him. *Id.* at 25-26.

After considering the nature of Defendant's original conviction for aggravated assault, his history of threats toward Jesmarie, and the involvement of a weapon, Renner believed the situation created an immediate public safety concern. (N.T. at 13-14). Therefore, Renner requested that his supervisor authorize a search for the firearm and drugs. *Id.* at 13-14, 31. In the several hundred cases Renner supervised in his career as a parole agent, he had responded similarly in other cases where a spouse made similar statements. *Id.* at 26-27.[3]

After his supervisor approved the request for a search, agents Renner, Ryan Patterson, Dennis Hartlove, and Christina Zborovian searched Defendant's home the following day. (N.T. at 15-18). Inside the home agents found drug paraphernalia and Defendant's cell phone which contained photos of a firearm. *Id.* at 18-20, 46. A gun was not found inside the residence. *Id.* at 20. Agents then notified Renner that a blue minivan was parked on Defendant's property which matched the description given by Jesmarie. *Id.* at 20, 57. The minivan was searched, Agent Zborovian found a blue satchel laying on the floor between the second and third row of seats, and a gun was located inside the satchel. *Id.* at 21, 57-59, 66-67. After finding the gun, agents contacted Lancaster City Police and turned the investigation over to them. *Id.* at 24, 67.

---

[3] Consistent with the testimony of Renner, state parole agents Dennis Hartlove and Christina Zborovian testified they were informed of credible information that Defendant was in possession of a firearm and drugs. (N.T. at 56, 66). As such, this was a matter of public safety and they too would have made the decision to search given the circumstances of the present case. *Id.* at 61-62, 66-68.

3

## DISCUSSION

"It is well established that individuals under parole supervision have limited search and seizure rights." *Commonwealth v. Sperber*, 177 A.3d 212, 215 (Pa. Super. 2017). "In exchange for early release from prison, the parolee cedes away certain constitutional protections enjoyed by the populace in general." *Id.* (quoting *Commonwealth v. Edwards*, 874 A.2d 1192, 1197 (Pa. Super. 2005)). Parolees agree to warrantless searches based only on reasonable suspicion. *Id.*

State parole officers have the statutory authority to search the person or property of individuals on state parole without a warrant. 61 Pa.C.S.A. § 6153(b)(1). A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision. 61 Pa.C.S.A. § 6153(d)(2).[4] The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decisions. 61 Pa.C.S.A. § 6153(d)(6). In accordance with such case law, the following factors, where applicable, may be taken into account:

(i)    The observations of agents.
(ii)   Information provided by others.
(iii)  The activities of the offender.
(iv)   Information provided by the offender.
(v)    The experience of agents with the offender.
(vi)   The experience of agents in similar circumstances.
(vii)  The prior criminal and supervisory history of the offender.
(viii) The need to verify compliance with the conditions of supervision.

*Id.*

---

[4] Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances. 61 Pa.C.S.A. § 6153(d)(3). While Defendant alleged in his Omnibus Pretrial Motion that prior approval of a supervisor was not obtained, testimony at the suppression hearing clearly showed otherwise. (N.T. at 13-15).

"A search will be deemed reasonable if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty." *Commonwealth v. Williams*, 692 A.2d 1031, 1036 (Pa. 1997).

## I.  The parole agent had reasonable suspicion to believe that Defendant had committed a parole violation.

Defendant alleges the statement provided by Jesmarie was the parole agent's sole basis for reasonable suspicion, and the statement was insufficient to give rise to reasonable suspicion. *See* Omnibus Pre-Trial Motion.  Specifically, Defendant avers the statement was insufficiently detailed, uncorroborated, and originated with a potentially biased source. *Id.*

"Parole officers may . . . base reasonable suspicion of drug possession on information provided by reliable third parties." *Commonwealth v. Gould*, 187 A.3d 927, 936 (Pa. Super. 2018). "[I]f an informer is known to the police, or identifies him or herself to the police, then there is an indicia of reliability attached to the tip, because the informant has placed himself or herself at risk for prosecution for giving false information to the police if the tip is untrue." *Commonwealth v. Hayward*, 756 A.2d 23, 34 (Pa. Super. 2000).  As such, the trustworthiness of information provided by a known or identified eyewitness may be presumed absent special circumstances. *Id.* at 36; *Commonwealth v. Bruner*, 564 A.2d 1277, 1282 (Pa. Super. 1989).

"[A] known informant is far less likely to produce false information" than one whose identity is unknown. *Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010).  Because a face-to-face report exposes the tipster to possible criminal liability and permits an officer to observe the witness's demeanor and assess credibility in light of the officer's past experience, a

tip made in person "must be given more weight than a mere anonymous phone call." *Commonwealth v. Soto*, 202 A.3d 80, 91 (Pa. Super. 2018) (quoting *Commonwealth v. Williams*, 980 A.2d 667, 672 (Pa. Super. 2009)).

Here, Jesmarie met with Renner on October 23, 2018 to report that Defendant threatened her with a black handgun and was selling drugs. The threat was made in person, it was recent, and Jesmarie had previously seen the gun. Jesmarie frequented Defendant's residence and was aware he kept the gun and drugs in his house or in vehicles at the residence. Renner believed Jesmarie was providing credible information because she had been credible in the past when reporting threats by Defendant and she was providing this information directly to him. Based on relevant case law, there is an indicia of reliability to the information provided by Jesmarie.

In addition to information provided by Jesmarie, Renner considered Defendant's original conviction for aggravated assault involving the use of a weapon and his previous harassment citation for a domestic incident involving Jesmarie, all of which bolstered the credibility and reliability of Jesmarie. Based on these factors, along with his extensive experience as a parole agent dealing with similar circumstances, Renner properly believed the situation created an immediate public safety concern. He also possessed reasonable suspicion that Defendant had committed a parole violation by unlawfully possessing a firearm and controlled substances.

Defendant argues Jesmarie was not credible because she did not sufficiently describe the gun. However, Jesmarie did report that she saw Defendant in possession of a black handgun which he kept in a blue bag at the residence or in certain vehicles, and possession of any firearm would be unlawful for Defendant. Furthermore, Jesmarie's identification of Defendant, the residence, and vehicles at that location were unambiguous.

Defendant argues Jesmarie was not credible because her written statement was not consistent with the testimony of Renner and it did not provide support for reasonable suspicion. However, while it was acknowledged that her hand-written statement provided limited information, Renner testified that Jesmarie gave much more detailed information in an oral statement prior to the written statement, and the more detailed information was consistent with his testimony at the suppression hearing. (N.T. at 11-13, 33-37, 43-44, 49-53). To that end, the Commonwealth introduced S.H. Exh. 2, which was a copy of the supervision history in this case. *Id.* at 49-50. From that history, Renner read a note dated October 23, 2018, which contained the more detailed information provided by Jesmarie in her oral statement. *Id.* at 51-53. The court found Renner to be credible in this regard.[5]

Defendant further argues Jesmarie was not credible because she and Defendant were engaged in a dispute over title to a vehicle. However, Jesmarie made no effort to conceal this dispute. (N.T. at 37-38). Rather, she specifically told Renner that this dispute was what had precipitated Defendant's threats. *Id.* As such, Defendant has cited no special circumstances which would cast doubt on Jesmarie's reliability.

Overall, the level of detail Jesmarie provided, the strong indicia of her reliability, the benefit of Renner's experience, the information about the history between Jesmarie and Defendant, and the weight of Defendant's prior aggravated assault conviction involving a firearm were sufficient to give rise to reasonable suspicion.

---

[5] On a motion to suppress evidence, the trial court has sole authority to assess the credibility of witnesses. *Commonwealth v. Simmen*, 58 A.3d 811, 817 (Pa. Super. 2012).

7

## II.     The search was reasonably related to the parole officer's duty.

Defendant next argues there was no reasonable relation between Jesmarie's allegations and the search of Defendant's property, particularly as it related to a search of the vehicle in Defendant's backyard after the search of the home did not yield evidence of a parole violation. *See* Omnibus Pre-Trial Motion. Defendant also argues parole agents had no authority to search his mother's vehicle where the gun was found. *See* Defendant's Brief. He further claims parole agents switched roles and effectively acted as police officers in conducting their search. *Id.*

A search is reasonably related to the parole agent's duty where "the parole officer was acting reasonably within the scope of his official duties to insure that appellee was not violating his parole." *Williams*, 692 A.2d at 1037. In *Commonwealth v. Murray*, 174 A.3d 1147 (Pa. Super. 2017), where the defendant violated parole by possessing a firearm, the Superior Court held the agent's search of the defendant's cell phone was reasonably related to the parole agent's duty where the agent testified the cell phone could contain additional evidence of a parole violation such as conversations about the firearm or photographs of the defendant with the firearm. *Id.* at 1156. Furthermore, where a parolee violated by absconding, a search of the parolee's bedroom was reasonably related to the violation because the bedroom could contain evidence of another address or place where he might be located. *Commonwealth v. Hunter*, 963 A.2d 545, 552 (Pa. Super. 2008).

Under the standard described in *Williams* as applied in *Murray* and *Hunter*, the search of Defendant's residence and vehicles located on his property was reasonably related to Renner's duty. Jesmarie informed Renner that Defendant stored a gun and drugs in his residence or in one of the vehicles on the property. Indeed, she specifically identified the blue minivan where the

gun was eventually located. Thus, there was sufficient reasonable suspicion to search for the contraband in Defendant's residence and in the described vehicles located on the property.

Assuming, *arguendo*, additional evidence of a parole violation was a prerequisite to searching beyond Defendant's residence, agents discovered drug paraphernalia and Defendant's cell phone containing a picture of a firearm while searching the residence. This evidence further corroborated the information provided by Jesmarie and supported her assertion that a firearm and/or drugs may be located in one of the vehicles on the property.

Moreover, while Defendant asserts there was no authority to search his mother's minivan, "[a] property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property *in the possession of or under the control of* the offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S.A. § 6153(d)(2) (emphasis added). The standard described by the statute does not require that Defendant have ownership of the property in order to permit a search of that property. Because Jesmarie informed Renner that Defendant kept the gun at various locations, including the specific vehicle which was ultimately searched, Renner had reasonable suspicion to believe Defendant's firearm might be inside one of those vehicles.

Finally, there is absolutely no evidence to support Defendant's argument that Renner switched roles and effectively acted as a police officer in conducting his search. Under the "stalking horse" doctrine, a probation officer may not aid police by statutorily circumventing the warrant requirement based on reasonable suspicion instead of probable cause. *Commonwealth v. Parker*, 152 A.3d 309, 320 (Pa. Super. 2016). However, where an agent's search is consistent with and reasonably related to their supervisory duties to confirm whether a parolee possessed

9

drugs or weapons in violation of regulations, the search was not unlawful merely because it revealed incriminating evidence for use in a criminal prosecution. *Id*. at 322. In *Parker*, where there was no prior arrangement with police regarding a search of the residence, the Superior Court found no evidence of an express or tacit agreement between the probation officers and police to support a "stalking horse" claim. *Id*. at 323.

In *Williams*, *supra*, the suppression court explicitly found that the parole agent who conducted a search of the parolee's residence was not acting as a "stalking horse" for the police. 692 A.2d at 1037 n. 11. The Superior Court affirmed, finding that where the parole officer received information from a confidential informant stating the parolee was dealing drugs, and the parole officer corroborated that information with the police, the parole officer was acting in his official duties to insure the parolee was not violating his parole when he conducted a search of the parolee's premises. *Id*.

In *Gould, supra*, police informed a parole agent that a parolee was suspected of drug activity at a certain motel. 187 A.3d at 931. The next day the agent went to the motel, saw the defendant arrive in a vehicle described by police, and searched the car while police were there for backup. *Id*. at 932. When the agent found drugs he stopped the search, notified police, and took the parolee into custody. *Id*. at 933. Although he was aware police were conducting an investigation, the agent stated police did not ask him to assist their investigation. *Id*. Rather, he was following up on information about a possible parole violation in his capacity as a parole officer. *Id*. The defendant argued the drugs should be suppressed because the parole officer was improperly acting at the behest of state police. *Id*. at 931. The Superior Court disagreed, finding that the parole agent was not acting as a stalking horse at the behest of police. *Id*. at 939.

10

In the present case, Renner was supervising Defendant at the time Jesmarie reported he was in violation of parole. With this credible information, Renner had reasonable suspicion to believe Defendant had committed a parole violation. Based on this suspicion, and out of concern for community safety, Renner immediately reported the situation to his supervisor and requested to search Defendant's residence and vehicles on the property for the alleged contraband. The very next day Renner conducted a search which was reasonably related to his duty. Police were not contacted until after the firearm was found, at which time the investigation was turned over to them. Unlike *Gould*, the parole agent here was not in contact with police prior to locating Defendant's firearm. If the parole agent in *Gould* was not acting at the behest of police in performing his duties, Renner certainly was not. Rather, as in *Parker*, Renner's search was consistent with and reasonably related to his supervisory duty to confirm whether a parolee possessed drugs or weapons in violation of parole regulations.

For all of the above reasons, the court finds that the search of the home and vehicle was grounded in reasonable suspicion and was reasonably related to the parole agent's duty. As such, the gun will not be suppressed.

## III. Admissibility of Defendant's prior bad acts.

On April 25, 2019, Defendant filed a Motion in Limine seeking to preclude the Commonwealth from introducing into evidence an emergency Protection from Abuse ("PFA") Order that Jesmarie obtained against Defendant on October 23, 2018. *See* Motion in Limine. At the suppression hearing held on May 17, 2019, the Commonwealth agreed they would not seek to introduce the emergency PFA. (N.T. at 72-74).

11

On May 27, 2019, the Commonwealth filed a Notice seeking to introduce evidence relating to a temporary PFA petition filed by Jesmarie against Defendant on October 24, 2018, and the final PFA Order entered by agreement on December 19, 2018. *See* Notice. According to the Commonwealth, Jesmarie filed the PFA petition for a temporary order in part because she was afraid of retribution by Defendant for notifying his state parole agent that Defendant had threatened her with a gun. *Id.* at ¶ 4. The Commonwealth believes this evidence is necessary to support the credibility of Jesmarie and to show a common scheme, design or plan. *Id.* at ¶ 10.

The Pennsylvania Rules of Evidence permit the introduction of a defendant's prior bad acts under the following circumstances:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.
> (2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
> (3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.
> (4) In criminal cases, the prosecution shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of any such evidence it intends to introduce at trial.

Pa.R.E. 404(b).

Evidence of prior bad acts is also admissible to prove "a common scheme, plan, or design where the crimes are so related that proof of one tends to prove the others." *Commonwealth v. Elliott*, 700 A.2d 1243, 1249 (Pa. 1997); *Commonwealth v. Bronshtein*, 691 A.2d 907, 915 (Pa. 1997) (evidence of other crimes admissible to show a common scheme, plan, or design embracing the commission of two crimes so related to each other that proof of one tends to prove the others). For the common scheme exception to apply, the prior bad act must share "unique

12

features with the charged offenses that reflect the defendant's 'signature'. General similarities or insignificant similarities are insufficient; 'more is required than the mere repeated commission of the same general class of crime.'" *Commonwealth v. Semenza*, 127 A.3d 1, 11 (Pa. Super. 2015).

In the present case, evidence related to the PFA petition and orders is admissible under the common scheme, design, or plan exception for the charge of terroristic threats because the alleged threats are part of a pattern of Defendant's prior abusive behavior towards Jesmarie. *See Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa. Super. 2010); *Commonwealth v. Luktisch*, 680 A.2d 877, 878 (Pa. Super. 1996). Moreover, the PFA petition and orders are admissible and relevant to show Defendant's motive, malice, intent, and ill-will toward Jesmarie. *See Commonwealth v. Ivy*, 146 A.3d 241, 251 (Pa. Super. 2016).

The PFA petition and orders are also admissible for the terroristic threats charge because they resulted directly from Defendant's threat to Jesmarie with a firearm and were based on her fear of retribution when she reported this threat to his parole officer. In *Commonwealth v. Hairston*, 84 A.3d 657 (Pa. 2014), the Pennsylvania Supreme Court recognized "the *res gestae* exception," which permits the admission of evidence of other crimes or bad acts to tell 'the complete story." *Id.* at 665. This exception "is properly invoked when the bad acts are part of the same transaction involving the charged crime." *Commonwealth v. Brown*, 52 A.3d 320, 332 (Pa. Super. 2012). This exception is also properly invoked for the charge of persons not to possess a firearm, which will be tried separately from the terroristic threats charge.[6]

---

[6] The Superior Court has held that the trial court abused its discretion by not severing a charge of persons not to posses a firearm from other charges that do not require evidence of a prior conviction. *Commonwealth v. Brown*, 186 A.3d 985, 993 (Pa. Super. 2018). Thus, because only the charge of persons not to possess a firearm requires evidence of Defendant's previous aggravated assault conviction, that count shall be bifurcated from the remaining two counts.

13

Moreover, because admission of the PFA documents is not unduly prejudicial or sufficient to rouse a jury to overmastering hostility, the probative value outweighs any prejudicial impact. *See Commonwealth v. Page*, 965 A.2d 1212, 1221 (Pa. Super. 2009). Defendant conceded as much when he did not object to the admissibility of this testimony at the suppression hearing or in his legal memorandum. Therefore, the PFA will be admissible at trial.

The Commonwealth also seeks to introduce evidence of Defendant's aggravated assault conviction from 2010, where Defendant and a co-defendant fired a handgun from inside a moving vehicle at two employees of a local bar while the employees were standing outside the bar. *See* Notice. The Commonwealth believes this evidence is "not only relevant, but necessary to the Commonwealth's case in chief as the prior assaultive behavior with a gun shows a common scheme, design, or plan in that when the Defendant threatens, or assaults other individuals, he does so not only with words or threats of physical violence, but he resorts to using weapons, specifically handguns, during the commission of an assault." *Id.* at ¶ 11.

In relation to the terroristic threats charge, the Commonwealth is seeking to introduce Defendant's prior aggravated assault conviction to prove he acted in conformity therewith. However, evidence of other crimes is not admissible to show action in conformity therewith. Furthermore, the similarity between the aggravated assault and terroristic threats charges is limited to use of a firearm to carry out a threat, which is not sufficient to establish a common scheme, design or plan. Thus, the Commonwealth is precluded from introducing Defendant's aggravated assault conviction at his trial for terroristic threats and receiving stolen property.[7]

---

[7] This conviction may be admissible in rebuttal if Defendant testifies to his good character or defends against the terroristic threats charge by arguing innocent intent. *See Commonwealth v. Crosley*, 180 A.3d 761, 770 (Pa. Super. 2018); *Commonwealth v. Bond*, 396 A.2d 414, 418 (Pa. Super. 1978).

14

However, evidence of a prior conviction is admissible where a defendant is charged with an offense which requires proof of another crime. *Commonwealth v. Johnson*, 160 A.3d 127, 144-45 (Pa. 2017). To establish Defendant's guilt on the charge of persons not to possess a firearm, the Commonwealth must prove in part that Defendant had previously been convicted of a statutorily enumerated offense that barred him from possessing a firearm. *See Commonwealth v. Jemison*, 98 A.3d 1254, 1256 (Pa. 2014). Defendant's prior conviction for aggravated assault prohibits him from possessing a firearm. *See* 18 Pa.C.S.A. § 6105(b).

In such a case, the defendant does not suffer unfair prejudice merely by the admission of his certified conviction of a specific, identified, predicate offense offered by the Commonwealth to prove the prior conviction element of the crime. *Jemison*, 98 A.3d at 1262. "Any possibility of unfair prejudice is greatly mitigated by the use of proper cautionary instructions to the jury, directing them to consider the defendant's prior offense only as evidence to establish the prior conviction element of the § 6105 charge, not as evidence of the defendant's bad character or propensity to commit crime." *Id.* Moreover, the prosecutor is not required to accept a stipulation to the fact of a prior conviction, without naming the prior offense, when the conviction is an element of the offense charged. *Id.* at 1261.

Therefore, the Commonwealth may introduce Defendant's prior aggravated assault conviction for the charge of persons not to possess a firearm because it is a necessary element of the offense. However, there shall be no reference to the facts underlying the aggravated assault conviction. *See Jemison*, 98 A.3d at 1257.[8] The court will also give a cautionary instruction.

---

[8] "When a defendant is impeached through introduction of prior convictions, only the name, time, and place of the crime and the punishment received may be entered." *Commonwealth v. Oglesby*, 418 A.2d 561, 564 (Pa. Super. 1980). In *Commonwealth v. Creary*, 201 A.3d 749 (Pa. Super. 2018), the

15

Finally, Defendant notes in his brief that the Commonwealth did not file a notice seeking to introduce Defendant's May 2018 harassment citation. However, at the suppression hearing the Commonwealth did state its intent to introduce the incident in order to rebut any possible suggestion by the defense that Defendant and Jesmarie did not have any problems prior to the date of this incident. (N.T. at 74, 79-81). In *Commonwealth v. Mawhinney*, 915 A.2d 107 (Pa. Super. 2006), the Superior Court held that no formal or written notice is required for such evidence to be admissible, only some form of notice pre-trial. *Id.* at 110. The key factor is that the defense have notice of such evidence so as to prevent unfair surprise and give the defense sufficient time to prepare an objection or rebuttal. *Id.* Because the Commonwealth has provided pre-trial notice of this prior bad act, evidence of the harassment citation may be admissible as rebuttal testimony if necessary, provided the Commonwealth establishes relevancy at trial.

**WHEREFORE**, the court enters the following order:

---

Superior Court noted that "[i]n prior cases, we have precluded a party seeking to impeach a witness from using the facts underlying a prior conviction, in circumstances where such facts would increase the risk of prejudice to a party or confusion of the issues." *Id.* at 754. In the present case, the facts underlying the prior aggravated assault conviction would clearly increase the risk of prejudice to Defendant because it also involved the use of a firearm. Conversely, facts underlying the conviction for aggravated assault are not necessary to establish an element of the crime of persons not to possess a firearm, and they offer little probative value.

16

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**CRIMINAL**

COMMONWEALTH OF PENNSYLVANIA  :
              :
vs.           :  No. CP-36-CR-0006387-2018
              :
FRANCIS CRUZ-RIVERA     :

## ORDER

**AND NOW**, this 26th day of August, 2019, upon consideration of the Omnibus Pretrial Motion filed by Francis Cruz-Rivera (Defendant), after holding a hearing on said motion on May 17, 2019, and after review of the memorandums of law filed by both counsel, the Court, pursuant to Pa.R.Crim.P. 581, hereby enters the following Order:

1. The Defendant's Omnibus Pre-trial Motion is **DENIED**.

2. The Commonwealth's Notice of Intention to Introduce Evidence of Other Crimes, Wrongs, or Acts Pursuant to Pennsylvania Rule of Evidence 404(b) is **GRANTED** in part and **DENIED** in part. The Commonwealth is permitted to introduce evidence of the temporary protection from abuse order Jesmarie Cruz-Rivera obtained against Defendant on October 24, 2018. The Commonwealth is permitted to present testimony of Defendant's aggravated assault conviction at his trial for persons not to possess a firearm as an element of the crime. The Commonwealth is not permitted to present testimony related to Defendant's aggravated assault conviction at his trial for terroristic threats unless Defendant testifies and opens the door.

3. Count one shall be bifurcated from the remaining counts. Call of the Criminal Trial List will be held on Friday, September 20, 2019, at 9:00 a.m., for count one only, and trial will be scheduled for Monday, September 23, 2019, at 9:00 a.m.

BY THE COURT:

_____
DONALD R. TOTARO, JUDGE

ATTEST:

Copies:      Lance D. Greene, Esquire, Assistant District Attorney
Michael V. Marinaro, Esquire, Counsel for Defendant
Jennifer L. Mulroney, Assistant District Court Administrator-Criminal

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL**

COMMONWEALTH OF PENNSYLVANIA      :

            :      No.    680 MDA 2020

vs.                 :

            :      CP-36-CR-0006387-2018

FRANCIS CRUZ-RIVERA         :

### PA. R.A.P. 1925 OPINION

BY TOTARO, J.

Before the Superior Court of Pennsylvania is an appeal filed by Francis Cruz-Rivera ("Appellant") from the judgment of sentence imposed on February 25, 2020. For the reasons stated herein, the appeal should be denied.

#### PROCEDURAL BACKGROUND

On October 23, 2018, Jesmarie Cruz-Rivera ("Jesmarie") reported to state parole officers that Appellant, her husband, had threatened to shoot her with his handgun. *See* Affidavit of Probable Cause. Jesmarie provided a written statement listing three vehicles where Appellant would have the gun, including a 2003 dark blue Grand Caravan. *Id.* Parole officers then searched the unlocked Grand Caravan and found a stolen black in color Kel Tec 9mm caliber handgun under the third row seat. *Id.* Appellant was unable to lawfully possess a firearm because he had a prior conviction for aggravated assault. *Id.* Appellant was charged with receiving stolen property, persons not to possess a firearm, and terroristic threats. *Id.*[1]

On April 11, 2019, Appellant filed a motion to suppress evidence obtained from the search of his home and vehicle. *See* Omnibus Pretrial Motion. A suppression hearing was held

---

[1] 18 Pa.C.S.A. § 3925(a), 18 Pa.C.S.A. § 6105(a)(1), and 18 Pa.C.S.A. § 2706(a)(1).

on May 17, 2019. (Notes of Testimony, Suppression Hearing) ("N.T.S.H"). On August 26, 2019, the trial court filed an Opinion and Order denying the Motion.

On December 10, 2019, following a two day jury trial, Appellant was found guilty of person not to possess, use, or control a firearm. (Notes of Testimony, Trial at 435). Thereafter, the Commonwealth nol-prosed the remaining counts. (Notes of Testimony, Sentencing at 8). On February 25, 2020, the court imposed a standard range guideline sentence of four and one half to ten years incarceration. *Id.* at 12, 15-16.

On April 28, 2020, Appellant filed a Notice of Appeal within the deadline established in response to the Statewide Judicial Emergency. Appellant filed a Statement of Errors Complained of on Appeal ("Statement") on June 12, 2020, within the deadline established by Administrative Order, asserting that the trial court erred in denying his Omnibus Pretrial Motion where (1) the parole agent did not have reasonable suspicion that a parole violation had occurred to search Appellant's property, and (2) the statement given to the agent by Jesmarie regarding a verbal dispute had no reasonable relation to the exhaustive search of Appellant's home and subsequent search of the vehicles on his property conducted by parole agents. *See* Statement. This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

## DISCUSSION

At the suppression hearing, testimony established that Appellant was convicted of aggravated assault and criminal conspiracy to commit aggravated assault on December 2, 2010. (N.T.S.H. at 41-42).[2] On March 25, 2011, the court imposed a sentence of four to ten years

---

[2] According to the prosecutor, Appellant was convicted of these crimes after he and co-conspirator Luis Velez-Mercado shot a gun multiple times. (N.T.S.H. at 76).

2

incarceration. *Id.* Appellant was released from prison on August 5, 2015, at which time his parole supervision began. *Id.* at 38-39.

State Parole Agent Chad Renner ("Renner"), of the Pennsylvania Board of Probation and Parole, testified that he began supervising Appellant's parole in June 2018. (N.T.S.H. at 8-9). Renner was aware of a domestic violence incident involving Appellant and Jesmarie which occurred on May 31, 2018, where Appellant was cited for harassment. *Id.* at 9. Appellant was placed on a GPS monitor and agreed to undergo domestic violence counseling. *Id.* at 9-10. After that incident, Jesmarie was told to contact the parole office if there were any future problems with Appellant. *Id.* at 10-11.

On October 23, 2018, Jesmarie met with Renner to report that Appellant had threatened to shoot her with a gun during a verbal argument. (N.T.S.H. at 11). Jesmarie told Renner that Appellant made the threat to her in person, it was recent, and she had previously seen the gun. *Id.* at 31-33. Jesmarie further reported that Appellant was involved in the sale of narcotics or cocaine. *Id.* at 11. Jesmarie stated that Appellant kept the gun and drugs in his residence and in a couple different vehicles he had access to, including a blue minivan. *Id.* Jesmarie described Appellant's firearm as a black handgun which he kept it in a blue bag or pouch. *Id.* at 12.

At Renner's request, Jesmarie wrote out a statement in his presence. (N.T.S.H. at 13). Renner was aware that Jesmarie frequented Appellant's residence, and he found her information to be credible because she was credible in the past when she reported previous threats made by Appellant. *Id.* at 25-26. She was also providing this information directly to him. *Id.*

After considering the nature of Appellant's original conviction for aggravated assault, his history of threats toward Jesmarie, and the involvement of a weapon, Renner believed the

3

situation created an immediate public safety concern. (N.T.S.H. at 13-14). Therefore, Renner requested that his supervisor authorize a search for the firearm and drugs. *Id.* In the several hundred cases Renner supervised in his career as a parole agent, he had responded similarly where a spouse or significant other reported that a parolee had a weapon. *Id.* at 26-27.[3]

The following day, after his supervisor approved the request for a search, agents Renner, Hartlove, Zborovian, and Ryan Patterson proceeded to Appellant's home. (N.T.S.H. at 15, 18). Inside the home where Appellant was known to sleep and spend most of his time, agents found drug paraphernalia and Appellant's cell phone which contained photos of a firearm. *Id.* at 18-20, 46. A gun was not found inside the residence. *Id.* at 20.

Agents then notified Renner that a blue minivan which matched the description given by Jesmarie was parked on Appellant's property. (N.T.S.H. at 20, 57). Hartlove ran the plates on the vehicle and it came back registered to Appellant's mother. *Id.* at 24, 58. The minivan was searched and Zborovian found a loaded firearm inside a blue bag that was laying on the floor in plain view between the second and third row of seats. *Id.* at 21-23, 57-59, 66-67.

### DISCUSSION

"It is well established that individuals under parole supervision have limited search and seizure rights." *Commonwealth v. Sperber*, 177 A.3d 212, 215 (Pa. Super. 2017). "In exchange for early release from prison, the parolee cedes away certain constitutional protections enjoyed by the populace in general." *Id.* (quoting *Commonwealth v. Edwards*, 874 A.2d 1192, 1197 (Pa. Super. 2005)). Parolees agree to warrantless searches based only on reasonable suspicion. *Id.*

---

[3] State parole agents Dennis Hartlove and Christina Zborovian testified that like Renner, they too would have made the decision to search given the circumstances of the present case. (N.T.S.H. at 61-62, 66-68).

State parole officers have the statutory authority to search the person or property of individuals on state parole without a warrant. 61 Pa.C.S.A. § 6153(b)(1). A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision. 61 Pa.C.S.A. § 6153(d)(2).[4]

The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decisions. 61 Pa.C.S.A. § 6153(d)(6). In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of agents.
(ii) Information provided by others.
(iii) The activities of the offender.
(iv) Information provided by the offender.
(v) The experience of agents with the offender.
(vi) The experience of agents in similar circumstances.
(vii) The prior criminal and supervisory history of the offender.
(viii) The need to verify compliance with the conditions of supervision.

*Id.*

"A search will be deemed reasonable if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty." *Commonwealth v. Williams*, 692 A.2d 1031, 1036 (Pa. 1997).

---

[4] Prior approval of a supervisor is necessary for a property search absent exigent circumstances. 61 Pa.C.S.A. § 6153(d)(3). While Appellant alleged in his omnibus pretrial motion that prior approval of a supervisor was not obtained, testimony at the suppression hearing clearly showed otherwise. (N.T.S.H. at 13-16, 27-28).

5

## I. Agent Renner had reasonable suspicion to believe that Appellant had committed a parole violation.

Appellant asserts Agent Renner did not have reasonable suspicion that a parole violation had occurred to support the search of Appellant's property, and therefore any contraband or items found on his person, property, or in the vehicle searched should have been suppressed as the fruit of the illegal search. *See* Statement.

It is not necessary for parole officers to personally observe illegal activity or suspicious conduct in order for them to form reasonable suspicion. *Commonwealth v. Gould*, 187 A.3d 927, 936 (Pa. Super. 2018). Rather, "[p]arole officers may . . . base reasonable suspicion of drug possession on information provided by reliable third parties." *Id.*

"[A] known informant is far less likely to produce false information" than one whose identity is unknown. *Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010). Because a tip made in person permits an officer to observe the witness's demeanor and assess credibility in light of the officer's past experience, such a tip "must be given more weight than a mere anonymous phone call because 'a person who knowingly gives false information to any law enforcement officer with intent to implicate another' may be held criminally liable." *Commonwealth v. Williams*, 980 A.2d 667, 671-72 (Pa. Super. 2009) (quoting 18 Pa.C.S. § 4906). As such, the trustworthiness of information provided by a known or identified eyewitness may be presumed absent special circumstances. *Commonwealth v. Bruner*, 564 A.2d 1277, 1282 (Pa. Super. 1989).

Here, Jesmarie met with Renner in person on October 23, 2018, to report that Appellant had threatened her with a black handgun and he was selling drugs. The threat was made by

6

Appellant to Jesmarie in person, it was recent, and Jesmarie saw Appellant with the gun. Jesmarie frequented Appellant's residence and was aware he kept the gun and drugs in his house or in vehicles at the residence. Renner believed Jesmarie was providing credible information because she had been credible in the past when reporting threats made by Appellant to her. Furthermore, Jesmarie was providing this information directly to him. Renner also considered Appellant's original conviction for aggravated assault involving the use of a weapon and his previous harassment citation for a domestic incident involving Jesmarie, all of which bolstered the credibility and reliability of Jesmarie's information.[5]

Based on Renner's experience as a state parole officer and on the information made known to him, Renner had reasonable suspicion to believe that Appellant had committed a parole violation by unlawfully possessing a firearm and controlled substances. Renner also properly believed the situation created an immediate public safety concern.

## II.    The search was reasonably related to the parole officer's duty.

Appellant further argues the statement given by Jesmarie to Renner regarding a verbal dispute had no reasonable relation to the exhaustive search of Appellant's home and subsequent search of the vehicles on his property conducted by parole agents. *See* Statement.

---

[5] Appellant argued that Jesmarie was not credible because her written statement was not consistent with the testimony of Renner and did not provide support for reasonable suspicion. *See* Brief in Support of Defendant's Omnibus Pretrial Motion. However, Renner testified that Jesmarie gave much more detailed information in an oral statement which was consistent with his testimony at the suppression hearing. (N.T.S.H. at 11-13, 33-37, 43-44, 49-53). The Commonwealth also introduced a copy of the supervision history in this case which contained the more detailed information provided by Jesmarie in her oral statement. *Id.* at 49-53. The court found Renner to be credible, and the trial court has sole authority to assess the credibility of witnesses in a motion to suppress evidence. *Commonwealth v. Simmen*, 58 A.3d 811, 817 (Pa. Super. 2012). Appellant further argued Jesmarie was not credible because she was engaged in a dispute with him over title to a vehicle. *See* Brief. However, Jesmarie made no effort to conceal this dispute. (N.T.S.H. at 37-38). Instead, she specifically told Renner that this dispute was what had precipitated Appellant's threats. *Id.*

7

A search is reasonably related to the parole agent's duty where "the parole officer was acting reasonably within the scope of his official duties to insure that appellee was not violating his parole." *Williams*, 692 A.2d at 1037. In *Commonwealth v. Murray*, 174 A.3d 1147 (Pa. Super. 2017), where the defendant violated parole by possessing a firearm, the Superior Court held that the agent's search of the defendant's cell phone was reasonably related to the parole agent's duty where the agent testified the cell phone could contain additional evidence of a parole violation such as conversations about the firearm or photographs of the defendant with the firearm. *Id.* at 1156. Furthermore, where a parolee violated by absconding, a search of the parolee's bedroom was reasonably related to the violation because the bedroom could contain evidence of another address or place where he might be located. *Commonwealth v. Hunter*, 963 A.2d 545, 552 (Pa. Super. 2008).

Under the standard described in *Williams* as applied in *Murray* and *Hunter*, the search of Appellant's residence and vehicles located on his property was reasonably related to Renner's duty as a parole officer. Contrary to Appellant's characterization of the statement, Jesmarie did not merely detail a "verbal dispute." Rather, Jesmarie stated that Appellant threatened her with a firearm. Jesmarie further informed Renner that Appellant stored the gun in his residence or in one of the vehicles on the property. Indeed, she specifically identified the blue minivan where the gun was eventually located. Thus, the specific search of the residence and the blue minivan was reasonably related to the parole officer's official duties to search for the contraband Jesmarie described in her statement.

Assuming, *arguendo*, additional evidence of a parole violation was a prerequisite to searching beyond Appellant's residence, agents discovered drug paraphernalia and Appellant's

8

cell phone containing a picture of a firearm in an area of the residence where Appellant was known to sleep and spend most of his time. This evidence further corroborated the information provided by Jesmarie and supported her assertion that a firearm and/or drugs may be located in one of the vehicles on the property.

Moreover, while Appellant asserted in his brief that there was no authority to search his mother's minivan, "[a] property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property *in the possession of or under the control of* the offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S.A. § 6153(d)(2) (emphasis added). Thus, the standard described by statute does not require that Appellant have ownership of the property in order to permit a search of the property. The property need only be under the control of the offender, and Appellant exercised control of the blue minivan by keeping his gun in that vehicle.

## CONCLUSION

The trial court properly denied Appellant's omnibus pretrial motion because the parole agent had reasonable suspicion to search Appellant's home and vehicle. The search was also reasonably related to the parole agent's duty. As such, the evidence recovered was not fruit of the poisonous tree and did not require suppression.

BY THE COURT:

Date:  ___June 22, 2020___

_____
DONALD R. TOTARO, JUDGE

cc:  Lance D. Greene, Esquire, Assistant District Attorney
Diana C. Kelleher, Esquire, Counsel for Appellant

9