J-S13037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
               :              PENNSYLVANIA
               :
         v.              :
               :
               :
LAVAUGHN EUGENE FOLKES      :
               :
      Appellant      :    No. 1424 MDA 2024

Appeal from the Judgment of Sentence Entered September 3, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002777-2023

BEFORE:  PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:          **FILED: AUGUST 26, 2025**

Appellant Lavaughn Eugene Folkes appeals from the judgment of sentence imposed after a jury found him guilty of one count of persons not to possess firearms.[1]  On appeal, Appellant argues that the trial court abused its discretion when it denied his motion to suppress.  After review, we affirm.

The trial court summarized the relevant facts of this matter as follows:

On June 13, 2023, two state parole agents were supervising [Appellant] as part of their intensive supervision caseload. [Appellant] was on parole for convictions of person not to possess a firearm, carrying a firearm without a license, as well as robbery and criminal conspiracy to commit robbery from . . . 2018. [Appellant] was placed then on intensive supervision because of [a separate] incident where he was in a car and a gun was found in the glove box of that car.  [Appellant] was found not guilty of that [separate] offense [where the gun was found in the car], however, as the parole officers testified, that incident allowed them to place [Appellant] on the intensive supervision caseload that they were part and parcel of.  The two agents were familiar

---

[1] 18 Pa.C.S. § 6105(a)(1).

with [Appellant's] underlying conviction[s] of firearms charges as well as this second incident that he was found not guilty of where a gun was found in the glove box of the vehicle.

While they were doing field work in the area of North 15th and Market Streets, a high-crime area, they observed [Appellant] around 8:45 p.m.[,] after his 8 p.m. curfew[,] in a car which he did not have permission from state parole to utilize. [Appellant] was speaking to a woman outside of the car at that time. The agents noticed the inspection sticker [on the car] was out of date. They inquired about insurance [and] registration to [Appellant]. [Appellant] called his girlfriend, who was his approved home provider, about the registration [for the car]. [Appellant] then asked [the unidentified] female [who was] outside of the vehicle, not his girlfriend who was [the person] he called [on the phone], to get the registration/insurance information out of the glove box. There was no one else in the car. [Appellant] did not seek to go into the glove box himself but asked [t]his third party to [do so].

The agents, due to the history of [Appellant], did not want another person to get into the car. They asked [Appellant] to exit [the] vehicle for safety concerns. Agent Voneida then turned the car off. At that time, the [unidentified] woman was informed that she could not enter that vehicle. Agent Gilbert who was towards the front passenger side of the vehicle[,] has been a state parole agent for four years. [The trial court also noted] Agent Voneida has experience, not that long as a state parole officer, but certainly as a county parole officer, has extensive experience and is very familiar with the area of 15th and Market.

Agent Gilbert overhear[d] the [Appellant's] conversation .. . and [Agent Voneida] also hear[d] the conversation with the girlfriend and the fact that [Appellant] has asked this [unidentified] female to enter [the car] to retrieve the registration information from the glove box, that set off, as was termed by Agent Gilbert, a red flag.

[Agent Gilbert] opened the door, opened the glove box and was unable to find valid registration and insurance. He observed a fanny pack/hip bag on the floorboard of the car. When he picked that up, it was in his estimation and his experience consistent with the weight of a firearm, also consistent with the history he knew of [Appellant]. He opened the bag and, of course, observed a firearm at that time.

At that time, he asked his partner to detain [Appellant]. [Appellant] was detained and was initially cooperative but then

was somewhat boisterous[.] The[] agents then called Harrisburg Police for backup. They also called their supervisor for approval to conduct a further search, which was given. [Appellant] was in an unapproved vehicle in a high crime area, past his curfew, in an area where he had never been seen before by his parole agents, in an area that was some 20 minutes away, approximately, from his approved residence. The car he was driving had an expired inspection sticker, [Appellant] was unable to produce valid registration for that [car]. [Appellant's] actions certainly raised concerns and suspicions of the officers when he did not seek to retrieve the registration on his own but asked a female to go around and get that registration.

The undersigned concluded:

We'll concede [Appellant] had an expectation of privacy, however, we find the agents were entirely credible in their testimony and that as a matter of law we find that they possessed reasonable suspicion that criminal activity was afoot at the time they conducted the search and reasonable suspicion that [Appellant] was in violation of [the] conditions of parole. Therefore, we find that when Agent Gilbert picked up that bag initially, at that point—did not search the bag but picked it up, then felt based on his experience that the weight was consistent with a firearm, at that point, [the agent] had even further reasonable suspicion, if not probable cause to open that fanny pack. Then we find that when he picked it up, he had reasonable suspicion, but certainly once he picked it up, he had more reasonable suspicion, if not probable cause.

Trial Ct. Op., 11/20/24, at 2-5 (citations and footnote omitted and some formatting altered).

Ultimately, the trial court denied Appellant's motion to suppress, and the case proceeded to a jury trial. *See id.* at 1, 5. As stated, the jury convicted Appellant of one count of persons not to possess firearms. *See id.* at 1. On September 3, 2024, the trial court sentenced Appellant to a term of nine to twenty years of incarceration, with credit for time served. *See id.* at

- 3 -

J-S13037-25

2. Appellant filed a timely notice of appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issue:

Parole agents encountered [Appellant] outside of curfew hours with an unrecognized car. Agents had [Appellant] outside of the vehicle and entered the car to obtain his registration. After searching for this item and finding nothing, parole agents then seized and searched a bag in the car despite no actions by [Appellant]. Did the suppression court err in finding that the agents had reasonable suspicion to seize this bag?

Appellant's Brief at 4.

We review a challenge to the trial court's denial of a parolee's motion to suppress under the following standards:

[Our review] is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. In making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Rosendary*, 313 A.3d 236, 240 (Pa. Super. 2024) (citation omitted and formatting altered).

Additionally, "our review is limited to the suppression hearing record." *Id.* at 240-41 (citation omitted). "With respect to a suppression court's factual findings, it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." *Id.* at 241 (citation omitted).

- 4 -

This Court has explained:

> The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution provide limited protection to those on parole. A parole officer need not obtain a warrant based upon probable cause before conducting a search of a parolee. Instead, a parole officer's warrantless search of a parolee will be deemed reasonable, and the fruits of the search will be admissible in court, if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty.

*Commonwealth v. Gould*, 187 A.3d 927, 935 (Pa. Super. 2018) (citations omitted and formatting altered).

"A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the department-supervised offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6182(d)(2). "A parolee has limited Fourth Amendment rights because of a diminished expectation of privacy." *Commonwealth v. McClellan*, 178 A.3d 874, 881 (Pa. Super. 2018) (citations omitted). "[P]arolees agree to endure warrantless searches based only on reasonable suspicion in exchange for their early release from prison." *Commonwealth v. Curry*, 900 A.2d 390, 394 (Pa. Super. 2006) (citation omitted and some formatting altered).

"The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by

judicial decision." 61 Pa.C.S. § 6182(d)(4). Under Section 6182, the following factors may be considered:

(i) The observations of agents.

(ii) Information provided by others.

(iii) The activities of the department-supervised offender.

(iv) Information provided by the department-supervised offender.

(v) The experience of [the] agents with the department-supervised offender.

(vi) The experience of [the] agents in similar circumstances.

(vii) The prior criminal and supervisory history of the department-supervised offender.

(viii) The need to verify compliance with the conditions of supervision.

*Id.*

As noted, a property search may be conducted if there is reasonable suspicion to believe that property in the possession of or under the control of the parolee contains contraband or other evidence of violations of the conditions of parole. **See** 61 Pa.C.S. § 6182(d)(2). A standard condition of state parole is that the parolee cannot possess a firearm. **See** 37 Pa. Code § 63.4(5)(ii).

Here, Appellant concedes that he was out after curfew and in an unregistered car, and he argues that there was no further investigation required to establish a parole violation. However, Appellant argues that there was no reasonable suspicion to search the car, and that the bag found inside the car that contained the firearm was not involved in any criminal activity.

Appellant asserts that asking the unidentified woman to retrieve information from the vehicle's glove box did not reflect criminal behavior. ***See*** Appellant's Brief at 13-17, 24. Therefore, Appellant concludes while the parole agents had the authority to seize Appellant, the parole agents lacked reasonable suspicion to search. ***See id.*** at 16, 23-28.

As noted previously, Agent Voneida testified that Appellant was under intensive supervision at the time of the interaction. ***See*** N.T., 1/26/24, at 9. This was due to the serious nature of the underlying convictions, and it involved weekly meetings and GPS monitoring. ***See id.*** The agent also testified that intensive supervision is different from typical parole supervision based upon considerations including the parolee's history with firearms and violence. ***See id.***

Here, when the agents approached Appellant on the night in question, Appellant was the sole occupant of the car, and he was talking to an unidentified female at the driver's side window. ***See id.*** Appellant was out after his 8:00 p.m. curfew, and he was operating a vehicle that had not been approved by parole agents. ***See id.*** at 19-21. The vehicle's registration was expired, and Agent Voneida asked Appellant if he had registration and insurance information for this car. ***See id.*** at 21. Appellant said that the car belonged to his girlfriend, who was not the unidentified woman, that he would need to call her to ask about the registration, and that he learned from the phone call that the registration may be in the glove box. ***See id.*** Appellant did not move toward the glove box, but rather he asked the unidentified

woman to walk around the car to the passenger side, enter the car, and open the glove box. *See id.* at 24. Agent Voneida testified that he would not allow the woman to enter the car for the agents' safety, and he asked Appellant to exit the vehicle also for the agents' safety. *See id.* at 24-25, 37.

The agent stated that the area at North 15th and Market Street is a high crime area with drug sales and firearms. *See id.* at 27. When the agents would not let the unidentified woman enter the car, Agent Gilbert went to enter the car and look for the registration, and Appellant yelled out to the gathering crowd that "you better go get your bag out of my car." *See id.* at 27. Agent Voneida testified that an unidentified "person attempted to go into the vehicle and had to be stopped by Agent Gilbert from entering the vehicle to retrieve -- to retrieve the bag that the firearm was in." *See id.* at 31. Because Appellant would not move toward the glove box and instead asked the unidentified woman to walk around the car and enter the passenger side to get to the glove box, Agent Voneida concluded that this behavior "raised a red flag." *Id.* at 41. The agent explained that Appellant's odd behavior, the request for the unidentified woman to enter the car, and the agent's knowledge of Appellant's history with firearms, led Agent Voneida to conclude that there may be contraband inside the car. *See id.*

Agent Gilbert testified that he was also aware of Appellant's criminal convictions concerning firearms and robbery. *See id.* at 43. In addition, Agent Gilbert knew that there was another incident where Appellant was stopped in a car and a gun was found in the glove box, but Appellant was not

convicted. *See id.* Agent Gilbert reiterated that when Appellant asked the unidentified female to walk around the car to the passenger side to enter the car to look for the registration, it was a "red flag" based on Appellant's history and the fact that, although it did not result in a conviction, Appellant had been involved in a prior incident in which Appellant was in a car with a gun in the glove box. *See id.* at 46. The agent reiterated that he told the unidentified female that she was not to enter the car and that the agents would look for the registration, again based on the agents' concern based on Appellant's history with firearms and because he was under intensive parole supervision. *See id.* at 47. Agent Gilbert then opened the glove box and did not find a valid registration, but he did see a black bag on floor of the car. *See id.* at 47-48. The agents were concerned that there was a firearm or other contraband inside the car due to Appellant's observed odd behavior, prior history with firearms, and the agents' knowledge of Appellant. *See id.* at 25, 41, 46. Agent Gilbert picked up the black bag, and after picking it up, based on his training and experience, he testified that the bag felt consistent with it containing a gun. *See id.* at 48. Agent Gilbert then opened the bag and saw the firearm, along with a wallet, a medical marijuana card, and other identification bearing Appellant's name. *See id.* at 50, 61.

In ruling on Appellant's suppression motion, the trial court explained:

Agents Voneida and Gilbert, while in a high-crime area, observed Appellant after curfew in a car that he did not have permission by state parole to use. Based on these violations, the agents certainly had cause to approach and engage Appellant. Appellant asked a woman, who was not the registered owner of the car, to

> enter into the car and get certain documents. This was odd behavior. Coupled with his history, being in an unauthorized area and vehicle in a high crime area, certainly there was reasonable suspicion criminal activity was afoot and that he was violating conditions of supervision. He was out past his curfew and a distance away from his residence. Accordingly, Appellant's argument should be denied.

Trial Ct. Op., 11/20/24, at 7 (some formatting altered).

We discern no error in the trial court's conclusion. As stated above, the parole agents possessed specific, individualized knowledge of Appellant's criminal history, including his prior firearms convictions and a separate incident where, although Appellant was acquitted, he was in a car and a firearm was discovered in the glove box. The agents' experience and familiarity with Appellant's background are considerations under the reasonable suspicion factors stated above. *See* 61 Pa.C.S. § 6182(d)(4).

In addition to Appellant's criminal history and background involving firearms, the agents observed Appellant exhibit odd behavior and noted that Appellant called out to the crowd that someone "better go get your bag out of my car." N.T., 1/26/24, at 27. Moreover, Appellant instructed an unidentified female to retrieve the vehicle registration from the glove box rather than doing so himself. Further, Appellant was out past curfew, operating an unapproved vehicle, and he was in a high-crime area. Each of these factors is independently relevant under 61 Pa.C.S. § 6182(d)(4) and, when considered together under the totality of the evidence, support a finding of reasonable suspicion. *See* 61 Pa.C.S. § 6182(d)(2) (stating that grounds for a state parole agent's property search exist "if there is reasonable suspicion to believe

- 10 -

that the real or other property in the possession of or under the control of the department-supervised offender contains contraband or other evidence of violations of the conditions of supervision"); *Gould*, 187 A.3d at 936-37 (holding parole agent had reasonable suspicion to detain defendant and search his person and vehicle, where police informed parole agent defendant was not residing at his designated residence, the defendant was seen in known high crime area, and the defendant had prior parole violations).

Moreover, we find that this case is distinguishable from *Commonwealth v. Anderson*, 276 A.3d 282 (Pa. Super. 2022) (*en banc*), where the Court held that mere presence in a high-crime area and general knowledge of an individual's parole status were insufficient to justify a search. Here, unlike in *Anderson*, the agents had individualized, particularized knowledge of Appellant's history and behavior, combined with contemporaneous suspicious conduct observed when they approached Appellant in the car, and we conclude that the agents possessed reasonable suspicion under 61 Pa.C.S. § 6182(d)(2) to search the vehicle for contraband or evidence of parole violations, as the vehicle was under Appellant's control. *See* 61 Pa.C.S. § 6182(d)(2); *Gould*, 187 A.3d at 936-37. Moreover, after entering the vehicle based on reasonable suspicion, Agent Gilbert observed a bag on the floor of the car on the passenger side. The agent did not immediately open the bag but rather picked it up and noted that its weight and shape were consistent with a firearm. This observation further contributed to the already-existing suspicion that Appellant may be concealing

contraband. The characteristics of the bag, Appellant's history with firearms, and the agent's knowledge of Appellant's prior behavior and criminal history, established reasonable suspicion to believe the bag contained contraband.

Based on the totality of the evidence, which included Appellant's prior criminal history involving firearms, the agents' direct observations, the location and timing of the interaction, Appellant's evasive behavior in asking a third party to open the glove box and distancing himself from that area of the car, and the characteristics of the bag found in the vehicle, the parole agents had reasonable suspicion under 61 Pa.C.S. § 6182(d) that contraband or additional evidence of a parole violation was inside the car and had reasonable suspicion to search the vehicle and the bag found on the floor. *See Gould*, 187 A.3d at 935 (explaining that reasonable suspicion to search a parolee's property is based on the totality of the evidence); 61 Pa.C.S. § 6182(d)(2). We reiterate that "[a] property search may be conducted by an agent if there is reasonable suspicion to believe that . . . property in the possession of or under the control of the [parolee] contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6182(d)(2) (emphasis added).[2]

---

[2] Although we have not found a published Pennsylvania case with identical facts, we note that **People v. Boyd**, 274 Cal.Rptr. 100 (Cal. Ct. App. 1990), was cited with approval by our Supreme Court in its seminal decision in **Commonwealth v. Williams**, 692 A.2d 1031 (Pa. 1997), in which our Supreme Court emphasized the diminished expectation of privacy for parolees and opined that warrantless searches of parolees are permitted under a
*(Footnote Continued Next Page)*

Upon review of the totality of the evidence, we conclude that the trial court's findings of fact and conclusions of law are supported by the record and free of legal error. *See Rosendary*, 313 A.3d at 240; *Gould*, 187 A.3d at 935. Accordingly, Appellant is not entitled to relief in his challenge to the denial of his motion to suppress, and we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/26/2025

---

reasonable suspicion standard. *See Williams*, 692 A.2d at 1037. In *Boyd*, the California Court of Appeal held that a parole agent's search of a handbag found inside a travel trailer was authorized where the parole officers had reasonable suspicion that parolee had violated the terms of parole and that the handbag may belong to one of two parolees; therefore, the handbag and the items found inside were properly searched and seized, and they were not suppressed. *See Boyd*, 274 Cal.Rptr. at 109.